## LOUISE G. DAVIS ET AL. v. FREDERICK COUNTY BOARD OF COUNTY COMMISSIONERS ET AL.

[No. 148, September Term, 1974.]

*Decided March 12, 1975.*

The cause was argued before ORTH, C. J. and POWERS and DAVIDSON, JJ.

*Herbert D. Morrison,* with whom was *W. Milnor Roberts* on the brief, for appellants.

*Joseph S. Kaufman,* with whom were *Ralph D. Gastley* and *Peter Max Zimmerman* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

Justice Benjamin N. Cardozo wrote in *United States v. Memphis Cotton Oil Co.,* 288 U. S. 62, 67-68, 53 S. Ct. 278, 280 (1933) that:

> "A 'cause of action' may mean one thing for one purpose and something different for another. It may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of res judicata. . . . At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ. Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed. This Court has not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed." (Citations and footnotes omitted.)

This case turns upon the definition of "cause of action" as that term relates to the doctrine of *res judicata*.

The appellants, homeowners in the Urbana region of Frederick County, allege that they were injured and aggrieved when on 31 July 1973 the Frederick County Commissioners (Commissioners) enacted Ordinance P.U.D. 73-2 (P.U.D. Ordinance). This P.U.D. Ordinance approved the first stage of a planned unit development to be built on property (subject property) adjoining that of the appellants, which land had formerly been classified in the A-1 Agricultural zone. It was adopted pursuant to Frederick County Code, Article I, § 40-23, as amended (Enabling Act), which the Commissioners enacted originally in 1959. The Enabling Act authorized the Commissioners, in accordance with designated procedures and standards, to approve applications for planned unit developments within specified zoning classifications existing in Frederick County.

On 31 August 1973 in the Circuit Court for Frederick County, the owners of homes on property adjacent to the subject property and the Urbana Civic Association filed a "petition for appeal" alleging insofar as here relevant that the Commissioners had employed improper procedures at the hearings on the application for the P.U.D. Ordinance, and that the action of the Commissioners in granting the P.U.D. Ordinance was unsupported by the evidence and was, therefore, arbitrary and capricious. The relief prayed was that the P.U.D. Ordinance be rescinded. That petition for a direct appeal was dismissed on 6 December 1973 for lack of jurisdiction, because the Enabling Act did not provide a right of appeal from the grant or denial of a planned unit development application. *See Urbana Civic Association v. Urbana Mobile Village, Inc.*, 260 Md. 458, 463, 272 A. 2d 628, 631 (1971).

On the same date the same adjacent property owners and the Civic Association filed a "bill of complaint for declaratory relief." Combined demurrers and answers were filed by the appellees, the Commissioners and the owners and developers of the subject property, which Judge Samuel

W. Barrick sustained with leave to amend. An amended bill of complaint was then filed on 14 December 1973 which alleged, insofar as here relevant:

1. that the P.U.D. Ordinance was adopted pursuant to the Enabling Act;
2. that the adjoining property owners were aggrieved by the P.U.D. Ordinance as it "will affect the quiet enjoyment and safety of their property by increasing traffic, noise and air pollution and by placing an intolerable strain on the natural water supply of the area all of which will result in greatly decreased property resale value as well as financial loss in drilling deeper wells on their properties"; and
3. that the Enabling Act was unconstitutional and/or violative of state statutes because it provided no right of appeal, was enacted in a closed executive session, and constituted "spot zoning."

The prayers for relief were as follows:

"1. To declare the Frederick County Ordinance codified at Article I, Chapter 40, § 40-23, of the Frederick County Regulations [the Enabling Act] to be invalid, null and void as being unconstitutional and improperly drawn and enacted.

"2. *To declare the Ordinance of July 31, 1973,* [the P.U.D. Ordinance] *to be invalid, null and void.*

"3. And for such other and further relief as to this Court may seem just and proper." (Emphasis added.)

A demurrer was interposed which came on for hearing on 11 January 1974 before Judge John F. McAuliffe. In a memorandum opinion dictated from the bench Judge McAuliffe found, among other things, that "by reason of the adoption of P.U.D. 73-2" the adjoining property owners had

standing to challenge the validity of the Enabling Act.[1] He concluded that a summary judgment should be granted since, there being no dispute as to the facts alleged, those facts, even if proven, would be insufficient to establish that the Enabling Act was invalid. On the same day he entered an order sustaining the demurrer and dismissing the bill of complaint.[2]

On 18 January 1974 the same adjoining property owners filed a bill of complaint in which they again alleged that they were aggrieved as homeowners by the approval of the P.U.D. Ordinance. They further alleged that the Commissioners' approval of the planned unit development application was invalid because:

1. A finding of change and/or mistake, required by the Enabling Act, was not based upon substantial evidence and was arbitrary and capricious;

2. A finding that water and sewer facilities were available to the subject property, required by the Enabling Act, was not made, and could not have been made since the approved master water and sewer plan for the county did not show such facilities;

3. The phase one approval of this planned unit development was premature; and

4. Their procedural rights to a fair hearing had been violated.

The relief prayed was for the court to *"judicially review and rescind"* the P.U.D. Ordinance.

---

1. Judge McAuliffe additionally ruled that the Civic Association was not a proper party plaintiff and, with respect to the Association, he sustained the demurrer without leave to amend.

2. On 14 October 1974 in *Urbana Civic Association, Inc., et al. v. Frederick County Board of County Commissioners*, 23 Md. App. 49, 325 A. 2d 755 (1974), this Court held that the sustaining of the demurrer in the suit for declaratory judgment was procedurally inappropriate and that as a matter of correct technical procedure the written decree or order should have declared the rights of the parties and granted a summary judgment. The case was remanded without affirmance or reversal for the entry of a modified decree in accordance with this Court's opinion and the oral opinion of the trial court on 11 January 1974. On 6 December 1974 Judge McAuliffe entered a modified decree.

On 19 February 1974 the Commissioners and the owners and developers of the subject property filed an answer denying all of the allegations regarding the invalidity of the P.U.D. Ordinance and raising as special defenses the doctrines of collateral estoppel, election of remedies and *res judicata*. On that same day the appellees filed a motion for summary judgment. On 20 March 1974, after a hearing, Judge Barrick entered an order granting the motion for summary judgment.[3] It is from this order that the present appeal is taken.

The conclusive question to be decided here is whether under the doctrine of *res judicata* the judgment in the original declaratory judgment action, which upheld the constitutionality and validity of the Enabling Act, constitutes an absolute bar to the subsequent suit involving the same parties, which was brought to determine whether the P.U.D. Ordinance had itself been properly enacted.[4] We here hold that it does.[5]

The doctrine of *res judicata* is designed to insure that litigation is brought to an end and to prevent harassment of

---

3. The order does not show the precise ground upon which Judge Barrick granted the motion for summary judgment.

4. There is no contention that there was not an identity of parties, that the court lacked jurisdiction over both the parties and the subject matter in each of the two declaratory judgment actions, or that there was not a final decision on the merits of the original declaratory judgment action. With respect to the latter, the record shows that at the time of the judgment in the instant case the judgment of the trial court in the original declaratory judgment action was pending on appeal. While it is well settled that the rules of *res judicata* do not apply unless there is a final judgment on the merits, the effect of the pendency of an appeal on the applicability of that doctrine has never been decided in Maryland. Badders v. Uhler, 233 Md. 441, 442-43, 197 A. 2d 120, 121, *cert. denied*, 377 U. S. 958, 84 S. Ct. 1639 (1964). We find it unnecessary to decide the question here because it was not raised or decided below. Maryland Rule 1085.

There was no contention made that the initial suit, instituted by a petition for appeal, which was dismissed for lack of jurisdiction, constitutes a bar. The appellees concede that an order of dismissal for lack of jurisdiction does not constitute a final judgment on the merits so that the doctrine of *res judicata* is inapplicable. *See* Moodhe v. Schenker, 176 Md. 259, 267, 4 A. 2d 453, 457 (1939); *Martin v. Evans*, 85 Md. 8, 10, 36 A. 258 (1897); *Hostetler v. Brotherhood of R.R. Trainmen*, 183 F. Supp. 281, 289 (1960), *aff'd*, 287 F. 2d 457 (1961), *cert. denied*, 368 U. S. 955, 82 S. Ct. 397 (1962); 46 Am.Jur.2d, *Judgments*, § 500 (p. 656) (1969).

5. In view of this holding appellees' contentions that the subsequent suit is barred under the doctrines of collateral estoppel and election of remedies need not be considered.

an adversary by a multitude of actions. In Maryland the doctrine of *res judicata,* or estoppel by judgment, consists of two branches, direct estoppel by judgment and collateral estoppel by judgment.[6] *Sterling v. Local 438,* 207 Md. 132, 140, 113 A. 2d 389, 393, *cert. denied,* 350 U. S. 875, 76 S. Ct. 119 (1955). The doctrine of direct estoppel is predicated upon the policy of the English common law that once a given matter becomes the subject of litigation in and of adjudication by a court of competent jurisdiction, the parties must bring forward their whole case and may not subsequently reopen the same subject of litigation in respect of another matter which might have been but was not brought forward. *See Mettee v. Boone,* 251 Md. 332, 341, 247 A. 2d 390, 395 (1968); *Alvey v. Alvey,* 225 Md. 386, 391, 171 A. 2d 92, 94 (1961); *Henderson v. Henderson,* 3 Hare 100, 115 (Eng. Chancery Ct.) (1843).

The doctrine of direct estoppel by judgment has been expressed in Maryland in different ways. While it has been said in Maryland that *res judicata* applies not only to the issues expressly decided in a prior case between the same parties but to every matter which might have been presented in that prior case, *Garrett Park v. Montgomery County,* 257 Md. 250, 257, 262 A. 2d 568, 572 (1970), *A.B. Viers, Inc. v. Whalen,* 256 Md. 162, 167, 259 A. 2d 516, 519 (1969), *Nutter v. Baltimore,* 232 Md. 210, 213, 192 A. 2d 477, 479 (1963), the doctrine of direct estoppel by judgment is not so broadly applicable. In several cases the Court of Appeals has defined the doctrine of direct estoppel somewhat more rigidly. Thus, in *Sterling, supra,* at 207 Md. 140-41, 113 A. 2d 393, the Court of Appeals said:

> "If the second suit is between the same parties *and is upon the same cause of action* a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated." (Emphasis added.)

---

6. In federal courts the term *res judicata* encompasses only the doctrine of direct estoppel by judgment. The term *res judicata* does not embrace the doctrine of collateral estoppel by judgment. 1B *Moore's Federal Practice,* ¶ 0.405 at 622, (2d ed. 1965, 1974 Supp.)

See also *Alvey, supra,* at 225 Md. 390, 171 A. 2d 94; *Roberts v. Gates,* 24 Md. App. 374, 380, 330 A. 2d 705, 710. In *Lebrun v. Marcey,* 199 Md. 223, 226-27, 86 A. 2d 512, 514 (1952), the same concept was expressed in slightly different words when the Court of Appeals said:

> " '[I]n a subsequent action between the same parties *upon the same claim or demand* ... the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " (Emphasis added.)

In *Johnson v. State Roads Commission,* 229 Md. 151, 152, 182 A. 2d 346 (1962), the Court of Appeals stated the doctrine of direct estoppel by judgment as follows:

> "It is well established that a judgment between the same parties *as to the same subject matter* is *res judicata,* not only as to points actually raised in the former proceeding but also as to those which could have been raised." (Emphasis added.)

These cases establish that the applicability of direct estoppel by judgment, with its attendant scope and effect, depends upon whether the "cause of action," "claim or demand" or "subject matter" [7] in two successive suits between the same parties is the same.

The appellees contend that the instant case is governed by the doctrine of direct estoppel by judgment. They concede that the facts alleged and the grounds of recovery set forth in the first suit are different from those alleged and set forth in the second suit. They maintain, however, that the only

---

7. The terms "cause of action," "claim or demand" or "subject matter" appear to be used interchangeably in the context of the doctrine of direct estoppel. Since most courts, text writers and other authorities use the term "cause of action" to express the concept herein involved, we shall utilize that term for purposes of this discussion.

harm suffered by the appellants as neighboring homeowners, arose from the passage of the P.U.D. Ordinance; that the events surrounding the passage of the Enabling Act were part of the group of operative facts or transactions which gave rise to the passage of the P.U.D. Ordinance; that the initial suit to declare the Enabling Act unconstitutional and invalid was brought for the purpose of nullifying the P.U.D. Ordinance; and that consequently the "cause of action," in both the declaratory judgment suit alleging the unconstitutionality and invalidity of the Enabling Act and the declaratory judgment action alleging improprieties on the part of the Council in passing the P.U.D. Ordinance itself, was one and the same. They conclude that the judgment in the first suit constitutes an absolute bar to the second and is conclusive not only as to the matters which were litigated in the prior suit, but also as to all of the facts, grounds, theories and other matters which could have been but were not actually litigated in the original declaratory judgment action.

The appellants contend that this case is governed by the doctrine of collateral estoppel, which is the other branch of the doctrine of *res judicata*. They maintain that the doctrine of collateral estoppel, as defined in Maryland, establishes that where a second action between the same parties is upon a different "cause of action," the judgment in the prior action operates as an estoppel only as to those points or questions actually litigated and determined in the original action and is not conclusive as to matters which might have been but were not litigated and determined in the prior action. *Arundel Asphalt Products, Inc. v. Morrison-Johnson, Inc.*, 256 Md. 170, 173, 259 A. 2d 789, 790 (1969); *Pat Perusse Realty Co. v. Lingo*, 249 Md. 33, 35, 238 A. 2d 100, 102 (1968); *Buford v. Bunn*, 247 Md. 203, 207-08, 230 A. 2d 636, 637-38 (1967); *Sterling, supra*, at 207 Md. 140-41, 113 A. 2d 393; *Lebrun, supra*, at 199 Md. 226-27, 86 A. 2d 514. They assert that the two declaratory judgment actions herein involved arose out of separate transactions, were based upon different facts, grounded on different legal theories, demanded different relief, and were, therefore, based upon

different "causes of action." They conclude that the judgment in the original declaratory judgment action is not conclusive as to any of the facts, grounds or matters raised in the subsequent action, none of which were litigated or determined in the prior action. We agree with the appellees that the two suits herein involved were based upon the same "cause of action." [8]

Textwriters and other authorities have recognized that the term "cause of action" for purposes of *res judicata* is a term of art which cannot be defined with precision. The following tests or definitions are among those most commonly employed to ascertain whether two suits are based upon the same "cause of action":

1. Whether the same right is alleged to be infringed by the same wrong in both actions;
2. Whether the operative facts are the same in both actions;
3. Whether the same evidence would sustain both judgments;
4. Whether the same grounds are presented in both actions;
5. Whether the same principles of substantive and procedural law are applicable to both actions; and
6. Whether the judgment sought in the second

---

8. In *Missler v. Anne Arundel County*, 271 Md. 70, 77, 314 A. 2d 451, 456 (1974), the Court of Appeals, expanding upon a quotation from *Pat Perusse, supra*, defined the "doctrine of *res judicata*" (collateral estoppel) as follows:

"The basic rule of *res judicata* is that facts or questions which were in issue [or which might have with propriety been placed in issue but were not, *Alvey v. Alvey*, 225 Md. 386, 171 A. 2d 92 (1961)] in a previous action and were [or could have been] therein determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties or their privies *even though the subsequent suit takes a different form or is based on a different cause of action.*" (Emphasis added.) (Bracket additions in original.)

Appellees contend that *Missler* has eroded the distinction between direct estoppel and collateral estoppel by judgment. Our holding that the two declaratory judgment actions herein involved are based upon the same "cause of action" makes consideration of that contention unnecessary.

action would infringe rights established in the first.[9]

*See* 1B *Moore's Federal Practice, supra,* ¶ 0.410 at 1158; *Developments in the Law—Res Judicata,* 65 *Harv. L. Rev.* 818, 824-25 (1952); Cleary, *Res Judicata Re-examined,* 57 *Yale L. J.* 339, 342-44 (1948).

We believe that the appropriate test for comparing "causes of action" for the purposes of *res judicata* is whether there has been a single wrongful invasion of a single primary right. In *Sterling, supra,* at 207 Md. 141, 113 A. 2d 393, the Court of Appeals explicitly applied the "one right-one wrong" test, stating:

> "The Supreme Court, in *Baltimore Steamship Co. v. Phillips,* 274 U. S. 316, [47 S. Ct. 600], 71 L. Ed. 1069 [1927], said that a cause of action is a violation of one right by a single legal wrong."

In *Baltimore Steamship* this test was fully explicated. There an 18 year old male, while employed on board a vessel, was injured by the fall of a strongback used to support a portion of the hatch and as a result suffered the amputation of a leg. He filed a libel in admiralty in the Federal District Court for Maryland, alleging that his injury was caused by the negligence of the steamship company in failing to provide a safe place to work and to use reasonable care to avoid striking him, and by the unseaworthiness and insufficiency of the gear and tackle employed on the vessel. After a trial, the district court held that upon the evidence the accident was not due to the negligence alleged.

Subsequently, an action was brought alleging negligence on the part of the steamship owners and their officers and employees in the control and operation of the vessel and appliances. The allegations of fact as to the way in which the accident happened were substantially the same in both cases. The defense of *res judicata* was interposed. The district court held that the second action was based upon a different cause of action than the first. A trial resulted in a verdict and judgment for the plaintiff. The United States

9. The applicability of this test appears to be limited to New York State.

Court of Appeals affirmed, holding in respect to the plea of *res judicata,* that the second action was based upon a different cause of action. The United States Supreme Court reversed. Justice Sutherland there said:

"Here the court below concluded that the cause of action set up in the second case was not the same as that alleged in the first, because the grounds of negligence pleaded were distinct and different in character; the ground alleged in the first case being the use of defective appliances, and in the second, the negligent operation of the appliances by the officers and coemployees. Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong, and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence, or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex.

"A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. *The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action* [emphasis added]. 'The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The *thing,* therefore, which in contemplation of law as its *cause,* becomes a ground for action, is not the group of *facts* alleged in the declaration, bill, or indictment, *but the result*

*of these in a legal wrong, the existence of which, if true, they conclusively evince* [emphasis in original]." ' " [10]

Applying this test to the instant case produces a clear result. Appellants, as homeowners, had a right to be free from the intrusion of an unlawfully established planned unit development adjacent to their houses and properties. As their pleadings make manifest, the appellants suffered no injury or wrong as homeowners as a result of the passage of the Enabling Act. Indeed, they suffered no injury as homeowners and were not aggrieved until the passage of the P.U.D. Ordinance. Their "standing" or legal right to bring the original declaratory judgment action depended upon the aggrievement and injury suffered by them as homeowners

---

**10.** The "one right-one wrong" test has been followed repeatedly by the federal courts. *See, e.g., Seaboard Coastline R.R. Co. v. Gulf Oil Corp.,* 409 F. 2d 879, 881 (5th Cir. 1969); *Rhodes v. Jones,* 351 F. 2d 884, 887 (8th Cir. 1965); *Englehardt v. Bell & Howell Co.,* 327 F. 2d 30, 32 (8th Cir. 1964); *F.L. Mendez & Co. v. General Motors Corp.,* 161 F. 2d 695, 696-98 (7th Cir. 1947). The *Restatement of Judgments* has also adopted this test. *Restatement of Judgments,* § 63, comment a, at 258 (1942).

The application of the "one right-one wrong" test implicitly rejects the "same evidence, same facts, same grounds, same principles" tests as exclusive determinants of what constitutes a cause of action for the purposes of *res judicata.*

It has been recognized that such tests are valid as positive but not negative indicia for determining the identity of causes. *See, e.g.,* Englehardt, *supra,* at 327 F. 2d 33-34; F.L. Mendez Co., *supra,* at 161 F. 2d 698; Ruskay v. Jensen, 342 F. Supp. 264, 270-71 (S.D. N.Y. 1972). *See also Restatement of Judgments* § 61, comments a, b (1942). Thus, when the wrong sued upon in two successive cases is the same, the assertion in both of the same facts, *Mettee, supra,* at 251 Md. 340-41, 247 A. 2d 394-95, *Sterling, supra,* at 207 Md. 140-42, 113 A. 2d 392-93, *Williams v. Messick,* 177 Md. 605, 613, 11 A. 2d 472, 475 (1955), or the same grounds, *Wagoner v. Wagoner,* 76 Md. 311, 315-16, 25 A. 338, 339 (1892), justifies a finding that those suits involve the same cause of action for the purposes of *res judicata.* But when there has been an assertion in the second case of different facts, *White v. Athey,* 229 Md. 28, 30-31, 181 A. 2d 466, 467 (1962), *Shirk v. Sneeringer,* 163 Md. 265, 266-67, 162 A. 520 (1932), *Wagoner, supra,* or different grounds, *Mettee, supra, Sterling, supra, Williams, supra,* or a combination of different facts and different grounds, *A.B. Viers, supra,* at 256 Md. 168-69, 259 A. 2d 519-20, *Alvey, supra,* at 225 Md. 389-90, 171 A. 2d 94, *City Council of Baltimore v. Linthicum,* 170 Md. 245, 248-50, 183 A. 531, 532-33 (1936), *Walzl v. King,* 113 Md. 550, 556, 77 A. 1117, 1119 (1910), from those asserted in the first, a finding that the same cause of action is involved in both suits is not precluded, so long as the wrong sued upon in both cases is identical. These cases illustrate that in Maryland the "one right-one wrong" test has been tacitly applied as the appropriate test for comparing causes of action.

as a result of the passage of the P.U.D. Ordinance.[11] *Compare Friendship Heights v. Funger*, 265 Md. 339, 343, 289 A. 2d 329, 331 (1972) *with County Commissioners of Queen Anne's County v. Miles*, 246 Md. 355, 361-62, 228 A. 2d 450, 454 (1967). *See also Prince George's County v. Board of Trustees*, 269 Md. 9, 11-13, 304 A. 2d 228, 229-30 (1973); *Liberto v. State's Attorney*, 223 Md. 356, 360-62, 164 A. 2d 719, 721-22 (1960); *Kirkwood v. Provident Savings Bank*, 205 Md. 48, 52-54, 106 A. 2d 103, 105-06 (1954); *Hitchcock v. Kloman*, 196 Md. 351, 355-56, 76 A. 2d 582, 584 (1950); *Hammond v. Lancaster*, 194 Md. 462, 471-72, 478-79, 71 A. 2d 474, 479, 481 (1950). Their original action prayed that the court declare the P.U.D. Ordinance to be "invalid, null and void" on the grounds that the Enabling Act was unconstitutional and invalid, whereas their second action prayed that the court "rescind" the P.U.D. Ordinance on the grounds that the Commissioners' actions in enacting it were arbitrary, capricious and violative of constitutional rights.

It is apparent that either the passage of the Enabling Act, if improper, or the passage of the P.U.D. Ordinance, if improper, or a combination of both, if improper, constituted a single wrongful invasion of the homeowners' primary right to be free from the intrusion of an unlawfully established planned unit development adjacent to their homes. Whether the harm suffered by the homeowners was due to the alleged invalidity of the Enabling Act or to the alleged invalidity of the P.U.D. Ordinance or to both, the harm for which they sought redress was the same. Thus, while the facts alleged in each of the suits differed, while the grounds upon which redress was sought also differed, while different evidence was necessary to prove the allegations set forth in each of the suits, and while different principles of substantive and procedural law were applicable, they nonetheless constituted

11. The appellants may have had standing as taxpayers to bring a declaratory judgment action as to the constitutionality and validity of the Enabling Act even before the Council's enactment of the P.U.D. Ordinance. However, their bill of complaint did not allege that they were taxpayers, that they were aggrieved as taxpayers, or that the nature of the injuries they suffered were those characteristically suffered by taxpayers. *See Citizens Planning and Housing Association et al. v. County Executive of Baltimore County et al.*, 273 Md. 333, 329 A. 2d 681.

the same cause of action. Whether the suits be considered separately or in combination they ultimately sought redress for the single violation of a single right by distinct acts which, either separately or in combination, resulted in a single wrong. The cause of action in both suits being the same, the doctrine of direct estoppel by judgment is applicable. The judgment in the original suit constitutes an absolute bar to the second and is conclusive, not only as to matters which were litigated in the earlier case, but as to all matters which could have been litigated.

Here the record shows that all of the facts relied upon in the second declaratory judgment action, none of which had been alleged in the original action, involved acts which had been committed by the Commissioners prior to the institution of the original declaratory judgment action, all of which had occurred and were known to the appellants at the time they instituted their original declaratory judgment action. Indeed, the record shows that the acts relied upon in the second declaratory judgment action were the same as those relied upon in the homeowners' original "petition for appeal" which was filed prior to the original declaratory judgment action. Moreover, the record is totally devoid of any facts to show some good reason or excuse for the appellants' failure, in the original declaratory judgment action, to allege that the action of the Commissioners in passing the P.U.D. Ordinance was arbitrary, capricious and in violation of their constitutional rights, which matters could have been alleged and litigated in their original suit. Indeed, the record indicates that the appellants' failure to allege those facts and litigate those issues was the result of a deliberate choice upon their part.[12] Under all of the circumstances here present the appellants are barred by the prior judgment from raising those facts and issues in a

12. At the hearing on 11 January 1974 in the initial declaratory judgment action, Judge McAuliffe specifically asked counsel for the appellants if they were then challenging the Commissioners' factual findings and the procedural validity of their actions in passing the P.U.D. Ordinance. Counsel stated that if the questions of arbitrary and capricious action on the part of the Commissioners were raised, the issue would be governed by the fairly debatable rule. He then indicated that "that [question] was not before the court."

subsequent action. *See Linthicum, supra.*[13] As stated in *Wagoner, supra,* at 76 Md. 315-16, 25 A. 359:

> "And if she [appellant] did not see proper to make any effort to present her whole case at once, she ought not now to be allowed to rely upon facts which might have been brought forward and made

**13.** In *Linthicum* an application for a special exception use to permit the operation of a federal post office was denied by the Board of Zoning Appeals of Baltimore City on the ground that such a use constituted a business use prohibited in residential districts by the zoning ordinance. On appeal the action of the Board was affirmed. Subsequently, another application for the same use was filed, which was denied by the Board on the same ground. On appeal the applicant contended that the exclusion of this use: (1) was unconstitutional because it was not within the state's police power, (2) constituted an impermissible regulation of federal property, and (3) interfered with the operation of the mails. The Court of Appeals held that the applicant was barred from raising these questions because of the judgment in the prior case. There the Court of Appeals stated:

> "This [initial judgment] disposes of all questions now presented, for they were all involved then in the general question of exclusion of the use, whether they were actually raised or not." 170 Md. 249, 183 A. 533.

Thus, the Court of Appeals has indicated that once the question of the appropriate use of land has become the subject of litigation a party must bring forward its whole case, including challenges to the findings and conclusions of the zoning authority, to the constitutionality of its actions, and to the validity of its actions in any and all other respects.

We note that recently the Court of Appeals of Michigan reached a contrary result in a case involving similar facts. In *Mango v. Plymouth Township Board of Trustees,* 190 N.W.2d 285 (Mich. App. 1971), a majority of that court held that a judgment in a landowners' action which upheld the constitutionality of a zoning ordinance was not a bar to a subsequent action brought by the same landowners to determine their right, under the ordinance, to repair or change their business. In reaching this result that court said:

> "The test to determine the applicability of the doctrine of *res judicata* is whether the facts or the evidence essential to the maintenance of the two actions are identical. If they are, the doctrine of *res judicata* bars the subsequent action.
>
> "Applying this test to the case at bar, it is clear that the facts and evidence necessary to attack the constitutionality of the ordinance are different from those necessary to establish plaintiffs' rights thereunder. Thus, the doctrine of *res judicata* did not bar the second action." (Citations omitted.)

As stated previously, Maryland has rejected the "same evidence" test as an exclusive determinant of what constitutes a cause of action for the purposes of *res judicata.*

a part of the subject-matter in contest in the first bill, but which were not therein alleged or made part of her first case, either through inadvertence or negligence. It will not do to say that the facts relied upon in the second bill were not alleged in the first bill, and could not, therefore, have been proved in the first case, for the answer is, it was the appellant's duty to have either alleged them in the first case or to have shown in this case some good reason or excuse why she did not so allege them. *Henderson v. Henderson*, 3 Hare, 115.

"In *Beloit v. Morgan*, 7 Wall. 622, in speaking of the principles of *res adjudicata*, the Supreme Court of the United States say [sic]:

'It extends not only to the questions of fact and of law which were decided in the former suit, but also to the grounds of recovery or defense, which might have been, but were not, presented.'

"This is a clear statement of a well-settled rule which is everywhere recognized, but, important as it is, it might as well be abolished if it can be evaded in the manner attempted in this case."

The judgment of the trial court will be affirmed.

*Judgment affirmed.*
*Costs to be paid by appellants.*