In re COMMUNITY MANAGEMENT CORPORATION OF MARYLAND, Debtor.

Community Management Corporation of Maryland, Plaintiff,

v.

Benjamin B. Weitz, et al., Defendants.

No. CIV.A.PJM–01–2848.
Bankruptcy No. 00–11625–PM.
Adversary No. 00–1595–PM.

United States District Court, D. Maryland.

Oct. 11, 2002.

Alvin I. Frederick, Baltimore, MD, David D. Hudgins, Alexandria, VA, for Plaintiffs.

Janet D. Neese, Alan I. Baron, Washington, D.C., for Defendants.

## *OPINION*

MESSITTE, District Judge.

Bardyl R. Tirana, Esquire, appeals from an Order entered by the Bankruptcy Court on August 23, 2001, imposing sanctions upon him as counsel for Community Management Corporation of Maryland (CMC), a company in bankruptcy. Benjamin B. Weitz et al. cross-appeal from that Order. The Court will REVERSE the Order.

### I.

In 1991, Weitz, the owner of CMC, an apartment holding management company, sold it to two of his former employees, Margaret Bessette and Arvind Shah. At the time, Weitz was also the managing partner of four partnerships that owned apartment buildings managed by CMC, all of whose management contracts passed with the sale: Jefferson House Associates Limited Partnership (Jefferson), Leesburg Manor Associates Limited Partnership (Leesburg), Shenandoah Associates Limited Partnership (Shenandoah) and Woodstock Associates Limited Partnership (Woodstock) (collectively, the Partnerships). The sale of CMC and the transfer of the management contracts did not proceed smoothly, eventually spawning multiple suits by and against CMC in federal and state courts.

At all times, Tirana, a member of the Maryland Bar, served as CMC's counsel.

In September 1997, Weitz' assignee, Trust Company of America (Trustco), filed suit in this Court against CMC, Bessette, Shah and Quantum Property Management Corporation (Quantum), a competitor of CMC owned by Bessette and Shah (PJM 97–CV–3187).[1] The suit alleged, among other things, that each defendant was liable on a $1.1 million promissory note executed as part of the CMC sale. On May 13, 1998, CMC filed its own suit in the Circuit Court for Montgomery County claiming that Weitz, the Partnerships and others had wrongly terminated their management agreements with CMC (Civil Action No. 186683). As set forth in the Second Amended Complaint in that case,[2] CMC asserted, *inter alia,* claims for breach of contract regarding the sale of CMC (Count II), breach of the covenant of good faith and fair dealing (Count III), fraud in the inducement (Count IV), tortious interference with contractual rights (Count V), conspiracy to interfere with contractual rights (Count VI) and breach of contract regarding the partnership management contracts (Counts VIII, IX, XII).

In that litigation, CMC, as before, was represented by Tirana.

In July 1998, this Court heard argument in the Trustco suit and granted defendants' motion to dismiss for lack of jurisdiction, finding that Weitz rather than Trustco was the real party in interest. Weitz et al. thereafter refiled the action in the Circuit Court for Montgomery County (Civil Action No. 190210). Not long after, on December 8, 1998, the Montgomery County Circuit Court consolidated Weitz et al.'s Civil Action No. 190210 with CMC's suit already pending in that court, Civil

---

**1.** Trustco had filed an earlier suit against the same defendants (Civil No. PJM 97–2845), but voluntarily dismissed the case before CMC filed its Answer.

**2.** The original Complaint and Amended Complaint are not a part of the record. The Court assumes that any differences between the Second Amended Complaint and the prior pleadings are irrelevant to this appeal.

Action No. 186683.[3] CMC then filed a counterclaim in Civil Action No. 190210, incorporating by reference its complaint filed in Civil Action No. 186683.

CMC's counsel, again, was Bardyl Tirana.

In a series of rulings, the Montgomery County Circuit Court undertook to decide the pending claims in Civil Action No. 190210. On March 18, 1999, it dismissed CMC's claims of breach of duty of good faith and fair dealing (Count III), tortious interference with contractual rights (Count V) and conspiracy to interfere with contractual rights (Count VI). On October 27, 1999, it granted summary judgment in favor of Jefferson and Shenandoah on CMC's claims for breach of the partnership contracts (Counts VIII and IX). On November 5, 1999, it granted summary judgment in favor of Weitz on CMC's claim of fraud in the inducement (Count IV). And, finally, on February 4, 2000, the court entered partial summary judgment against CMC and a partial dismissal in favor of Leesburg on CMC's breach of partnership contract claim (Count XII).

Then, on February 17, 2000, CMC filed a Chapter 11 bankruptcy proceeding in this District.[4] The immediate effect of the filing, of course, was automatically to stay the proceedings against CMC in the state litigation. At a hearing before Judge Ann S. Harrington of the Montgomery County Circuit Court on February 22, 2000, the following colloquy took place between the court, Tirana, and Alan Baron, counsel for the Partnerships:

Tirana: There has been, I believe, a change in my status. CMC filed a bankruptcy petition some time after close of business on February 17. I believe that that means that I no longer represent CMC unless and until the Bankruptcy Court approves me as special counsel. I am not counsel for CMC in the bankruptcy proceeding.

Court: But I think it means not that you are no longer legal counsel of record, but that all proceedings either brought by CMC or against CMC are stayed pending the lifting of the stay, which would have to be done in the Bankruptcy Court.

Tirana: Whatever the law—I can represent to the Court that while I have appeared in Bankruptcy Court in several jurisdictions, what I know will fill at most a thimble. So I don't know what it means.

Baron: We have discussed it with bankruptcy counsel, Your Honor. Our understanding is that the Court is correct, and that essentially we go forward here today without any action. You know, we cannot pursue anything against CMC. It is out of the case.

Court: And CMC's claim is also stayed.

Baron: Yes.

Court: And so Mr. Tirana may leave.

Baron: Yes.

From that point forward, neither CMC nor Tirana participated in the state court proceeding.[5] The same day, however, Judge

---

3. Maryland, as it happens, was not the only venue where the parties were doing battle. In 1998, Jefferson, Leesburg and Shenandoah had each filed suit in various Virginia state courts against CMC, Bessette, Shah and a CMC officer to recover monies allegedly removed by CMC from the Partnerships' trust accounts. CMC filed essentially identical Cross–Bills in each of these cases, in one case alleging precisely the same claims asserted by it in the Maryland litigation.

4. The case was ultimately converted to a Chapter 7 bankruptcy.

5. The record is unclear regarding the status of the Virginia litigation as of then or now. On January 27, 2000, the Circuit Court for the

Harrington granted summary judgment in favor of Weitz et al. on the breach of contract claim that CMC's co-counterplaintiffs had filed against Weitz et al. in that proceeding (Count II) and thereafter denied the Motion for Reconsideration that had been filed with respect to all the other claims as to which the court had earlier found in favor of Weitz et al.

That same day, Judge Harrington also began a jury trial on Weitz at al's claims for breach of the promissory note that comprised the basis of their original lawsuit. Three days later, the jury returned a verdict against all of CMC's co-defendants (Bessette, Shah and Quantum) for $581,484.00. On February 29, 2000, judgment was entered on the verdict.[6] On June 27, 2000, CMC's co-defendants took an appeal from the verdict and judgment.

CMC, of course, escaped any finding of liability in the Montgomery County case by reason of the automatic bankruptcy stay. Since the stay, however, did not affect CMC's right to bring suits on its behalf,[7] Tirana eventually, on December 14, 2000, filed a nine-count Complaint in the bankruptcy proceeding against Weitz et al. for breach of contract of redemption agreements (Count I), breach of the cove-

nant of good faith and fair dealing (Count II), fraud in the inducement (Count III), tortious interference with contractual rights (Count IV), conspiracy to interfere with contractual rights (Count V), and breach of contract regarding the partnership management agreements (Counts VI, VII, VIII and IX). These claims looked all too familiar to Weitz et al.[8] In response, they moved to dismiss CMC's suit for failure to state a claim or, in the alternative, for summary judgment, arguing that Tirana had asserted the same claims in various forms during each of the prior lawsuits. Specifically, they argued that, prior to the filing of CMC's complaint in the Bankruptcy Court, the Montgomery County Circuit Court had ruled upon issues underlying seven of the nine counts. Principles of res judicata and collateral estoppel, they said, precluded re-litigation of the issues.

The Bankruptcy Court agreed, holding that Counts I–V, VII and IX of the Complaint in the bankruptcy proceeding were identical or nearly identical to claims already adjudicated by the state court.[9] The court found that, although CMC was not technically a party to these judgments, it was sufficiently in privity with Bessette and Shah as to cause it to be bound by the

City of Lynchburg sustained Jefferson's demurrer to CMC's Cross–Bill for Counts I–VIII and X without leave to amend. Final resolution of the Shenandoah and Leesburg cases is not apparent from the record. However, on February 13, 2001, each partnership filed a Notice of Removal to the Maryland Bankruptcy Court where their claims were pending as adversary proceedings within CMC's main case as numbers 01–1044 (Jefferson), 01–1045 (Shenandoah) and 01–1046 (Leesburg).

**6.** On April 17, 2000, the judgment was recorded in the Judgment Index in the amount of $887,829.00, which included interest, costs and attorneys' fees.

**7.** At the February 17, 2000 hearing at which Tirana advised Judge Harrington of the bank-

ruptcy filing, the court incorrectly stated that the automatic stay also extended to claims that CMC brought or might bring, as opposed to proceedings brought against it. *See Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir.1994); *Farley v. Henson*, 2 F.3d 273, 274 (8th Cir. 1993); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991); *In re Allnutt*, 1995 WL 222067, at *3 (D.Md. Apr.10, 1995).

**8.** Attachment A shows how the claims in the state proceedings corresponded to the claims in the Bankruptcy Court proceeding.

**9.** The court abstained from exercising jurisdiction over Counts VI and VIII, finding them duplicative of other claims.

judgments against them. The court, therefore, dismissed CMC's complaint. CMC took no appeal from this dismissal.

In conjunction with their Motion to Dismiss, however, Weitz et al. had submitted a Motion for Rule 11 sanctions, seeking an award of reasonable attorneys' fees and other expenses. Tirana, they claimed, by reason of his multiple filings had harassed them, needlessly increasing the cost of litigation. Construing the Rule 11 request as one for sanctions under Bankruptcy Rule 9011,[10] the Bankruptcy Court again agreed with Weitz et al. Tirana was individually sanctioned in the amount of $33,248.68, which represented fifty percent of Weitz et al.'s attorneys' fees.[11]

Tirana has brought this appeal, arguing that any award of sanctions against him is unjustified. Weitz et al. cross-appeal on the grounds that the award is not substantial enough. The Court considers these arguments.

## II.

A district court reviews a bankruptcy court's determinations under Rule 9011 for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *In re Weiss*, 111 F.3d 1159, 1169 (4th Cir. 1997). "Abuse" signifies "an erroneous view of the law or a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405, 110 S.Ct. 2447. The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *See* FED. R. BANKR. P. 8013; *In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 119 (4th Cir.1994).

Generally speaking, Rule 9011 sanctions are appropriate when a complaint has been filed that is barred by res judicata or collateral estoppel. *See King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir.1992) (res judicata); *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988) (res judicata and collateral estoppel); *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080, 1091 (3d Cir.1988) (res judicata).[12] In assessing conduct alleged to violate the Rule, the court evaluates the attorney's

**10.** In relevant part, Bankruptcy Rule 9011 provides

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have eviden-

tiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
FED. R. BANKR. P. 9011(b).

**11.** Prior to filing the Motion, Weitz et al.'s counsel telephoned Tirana to give him an opportunity to withdraw his Complaint or face a Rule 11 Motion. Counsel followed up by serving Tirana with a draft Motion, as required by Rule 9011(c)(1)(A). When Tirana failed to withdraw the Complaint, Weitz et al. filed their Motion with the Bankruptcy Court.

**12.** Because both Rule 11 and Rule 9011 seek to prevent the filing of pleadings for improper purposes, cases interpreting conduct violative of Rule 11 have been deemed relevant when assessing conduct under Rule 9011. *See In re Weiss*, 111 F.3d at 1170.

actions under an objective standard of reasonableness, *i.e.*, it considers whether the conduct was "reasonable under the circumstances." *See In re Weiss*, 111 F.3d at 1171; *In re Kunstler*, 914 F.2d 505, 514 (4th Cir.1990); *In re Allnutt*, 1995 WL 222067, at *5 (D.Md. Apr.10, 1995).

### III.

■ In his argument before this Court, Tirana assigns three errors. First, he contends that the Bankruptcy Court abused its discretion when it awarded sanctions against him because, when he filed the adversary proceeding in the Bankruptcy Court, he could reasonably and objectively have believed that the judgment of the Montgomery County Circuit Court was not final for purposes of res judicata and collateral estoppel. Next, he claims that the Bankruptcy Court abused its discretion when it refused to allow his proffered expert witness, a Montgomery County attorney, to testify that Tirana had acted objectively reasonably in filing the repetitive claims. Finally, Tirana argues that sanctions were awarded against him not as a deterrent to future Rule 9011 violations but rather as an improper fee-shifting mechanism. For all these reasons, he asks this Court to reverse and vacate the Bankruptcy Court's Order or, in the alternative, to vacate the Order and remand the case with instructions to enter a reprimand against him without monetary sanctions.

### IV.

Tirana claims that on at least two accounts it was objectively reasonable for him to believe that the judgment of the Montgomery County Circuit Court was not final, hence that it was reasonable for him to have filed the adversary proceeding. First, Maryland Rule 2–602 provides that

"an order or other form of decision, however designated, ... that adjudicates the rights and liabilities of fewer than all the parties to the action ... is not a final judgment." Md. Rule 2–602(a)(1). Because the Montgomery County proceedings had been stayed as to CMC and because no express written order had been entered finding that there was no just reason for delay in entering a final order against fewer than all of the parties, *see* Md. Rule 2–602(b)(1), the court's judgment, he contends, was against "fewer than all parties"; thus under Rule 2–602(a)(1) it was not a final judgment. Second, Tirana says, even if CMC was somehow in privity with other parties as to the state court judgment, he could also have objectively reasonably believed that the fact that the judgment against the other parties was on appeal militated against its finality for res judicata and collateral estoppel purposes. This Court finds both arguments convincing.

Both parties have apparently overlooked *Starfish Condominium Ass'n v. Yorkridge Service Corp.*, 292 Md. 557, 440 A.2d 373 (1982). There, the Maryland Court of Appeals held that when proceedings against one of multiple defendants in a civil case have been stayed by reason of the automatic bankruptcy stay, even the judgment of the trial court as to the remaining defendants is not final for appeal purposes, unless the trial court enters an express written order finding no just cause for delay in entering final judgment against fewer than all the defendants pursuant to Maryland Rule 2–602(b). 292 Md. at 566, 440 A.2d at 378. But if that is so, *a fortiori* the judgment would not be final as to the party under the stay. As the *Starfish Condominium* court noted, "a stay under [then] Bankruptcy Rule 401(a) [13] of

---

**13.** Bankruptcy Rule 401(a) existed under the

former Bankruptcy Act, which Congress al-

a suit pending in a nonbankruptcy court against the bankrupt 'is not a dismissal of the suit nor does it deprive the court of jurisdiction over the matter; it merely suspends the proceedings.' " 292 Md. at 563, 440 A.2d at 377 (citing *David v. Hooker, Ltd.,* 560 F.2d 412, 418 (9th Cir.1977)). Indeed, any decision of the trial court involving the bankrupt that pre-dated the suggestion of bankruptcy would remain subject to plenary revision by the court at any time. Md. Rule 2–602(a)(3). In the present case, the Montgomery County Circuit Court never entered an order pursuant to Maryland Rule 2–602(b). Tirana, therefore, is quite correct in his argument as to the non-finality of that court's judgment. But, for present purposes, Tirana does not have to be correct in the final analysis. It is enough that he could reasonably have concluded that the state court judgment *might* not be final as to CMC. That test he passes quite easily.

█ The same is true with regard to the appeal taken by the parties with whom CMC was supposedly in privity. It may be assumed, despite *Starfish Condominium,* that the judgment of the Montgomery County Circuit Court was appealable by other defendants in the Montgomery County case. Even so, as of the time of the filing of the adversary proceeding, no Maryland appellate court had held (nor has one held as of today) that a trial court judgment on appeal is final for res judicata or collateral estoppel purposes. In fact, both the Maryland Court of Appeals and Court of Special Appeals have expressly stated that this point remains undecided. As the Maryland Court of Appeals said in *Badders v. Uhler,* 233 Md. 441, 197 A.2d 120 (1964),

The first contention of the appellant is that since there was an appeal pending in the previous suit, there was no final judgment and the court erred in applying the rule of res judicata and in granting the summary judgment. The point appears to be a novel one in Maryland. *Green v. State,* 170 Md. 134, 142, 183 A. 526, relied on by the appellant, was not a case of res judicata and is distinguishable on the facts. It is, of course, well settled that the rules of res judicata do not apply unless there is a final judgment. *Surrey Inn, Inc. v. Jennings,* 215 Md. 446, 454–455, 138 A.2d 658. But on the precise point as to the effect of an appeal there is a broad split of authority. The cases pro and con are collected in Annotation, 9 A.L.R.2d 984[, 1950 WL 7140]. *See also* 2 Freeman, Judgments (5th ed.1925), § 722, and Restatement, Judgments § 41, Comment (d). Some courts have solved the problem by granting a continuance or stay until the pending appeal is decided. We find it unnecessary to decide the question here . . . .

233 Md. at 442–43, 197 A.2d at 121. The Court of Special Appeals reiterated the point in *Davis v. Frederick County Bd.,* 25 Md.App. 68, 73 n. 4, 334 A.2d 165, 168 n. 4 (1975), stating that "[w]hile it is well settled that the rules of res judicata do not apply unless there is a final judgment on the merits, the effect of the pendency of an appeal on the applicability of that doctrine has never been decided in Maryland." Accordingly, the Bankruptcy Court's reliance on *Planned Parenthood of the Columbia/Willamette, Inc. v. Bray (In re Bray),* 256 B.R. 708 (Bankr.D.Md.2000),[14] a bank-

tered when it enacted the modern-day version of the Bankruptcy Code in 1978. *See generally* Pub.L. No. 95–598, Title I, § 101 *et seq.,* 92

Stat. 2549. That Rule, as amended, is now codified at 11 U.S.C. § 362(a) (2002).

**14.** The Bankruptcy Court there held that "the pendency of an appeal does not affect the

ruptcy court decision reached *after* Tirana filed the adversary proceeding in this case, was erroneous. It was erroneous not only because the case post-dated what Tirana did, *cf. Matter of Excello Press, Inc.,* 967 F.2d 1109, 1112 (7th Cir.1992) (proper analysis for frivolousness under Rule 9011 is whether attorney "conducted an adequate inquiry into the facts and the law *before* he filed the claim.") (emphasis added); it was also inappropriate because in diversity litigation regarding matters of res judicata and collateral estoppel, federal courts follow the law of the state where they sit. *See Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *In re Genesys Data Techs., Inc.,* 204 F.3d 124, 127 (4th Cir.2000) ("[28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."). In the present case, what the Mary-

---

finality of a judgment for purposes of res judicata or collateral estoppel." *In re Bray,*

land appellate courts had to say in *Badders* and *Davis* before Tirana acted was and is far more relevant for purposes of the "reasonableness determination" involved in passing upon sanctions than what the Bankruptcy Court said in *In re Bray* after Tirana acted.

The Court, therefore, concludes-respectfully to be sure-that the Bankruptcy Court abused its discretion in sanctioning Tirana under Rule 9011. His actions under the circumstances were sufficiently reasonable to avoid that result. In light of this determination, there is no need to address Tirana's remaining arguments or Weitz et al.'s cross-appeal.

### V.

The Court will REVERSE the decision of the Bankruptcy Court awarding Rule 9011 sanctions against Tirana in the amount of $33,248.68.

---

256 B.R. at 711.

## SUMMARY OF COMPLAINTS FILED BY CMC

| COUNT IN ADVERSARIAL PROCEEDING 0-1595-PM 12/18/00 | COUNT IN MONTGOMERY COUNTY CIVIL 186683 5/13/98 | COUNT IN COUNTER CLAIM 190210 1/14/99 | DISPOSITION IN MONTGOMERY COUNTY CIVIL 186683 CONSOLIDATED WITH CIVIL 190210 | COUNT IN CROSS BILL CITY OF LYNCHBURG CH9802O219 2/08/99 | DISPOSITION OF CITY OF LYNCHBURG CIRCUIT COURT (Jefferson Litigation) CH98020219 |
|---|---|---|---|---|---|
| I - Weitz Breach of Contract | II | II | Summary Judgment Granted for Weitz 2/22/00 - Docket Entry 213 | II | Demurrer Sustained without Leave to Amend 1/27/00 |
| II - Weitz Breach of Duty of Good Faith & Fair Dealing | III | III | Dismissed 3/18/99 - Docket Entry 92 | III | Demurrer Sustained without Leave to Amend 1/27/00 |
| III - Weitz Fraud in the inducement | IV | IV | Summary Judgment Granted for Weitz 11/05/99 - Docket Entry 176 Order Entered 2/04/00 Docket 198 Reconsideration Denied 2/23/00 - Docket Entry 222 | IV | Demurrer Sustained without Leave to Amend 1/27/00 |
| IV - Weitz Tortious Interference with Contract | V | V | Dismissed 3/18/99 - Docket Entry 92 | V | Demurrer Sustained without Leave to Amend 1/27/00 |
| V - Weitz Conspiracy | VI | VI | Dismissed 3/18/99 - Docket Entry 92 | VI | Demurrer Sustained without Leave to Amend 1/27/00 |
| VI - Woodstock Breach of Contract | N/A | N/A | Pending in Bankruptcy Court Case 97-1-00924k | N/A | |

# SUMMARY OF COMPLAINTS FILED BY CMC

| COUNT IN ADVERSARIAL PROCEEDING 0-1595-PM 12/18/00 | COUNT IN MONTGOMERY COUNTY CIVIL 186683 5/13/98 | COUNT IN COUNTER CLAIM 190210 1/14/99 | DISPOSITION IN MONTGOMERY COUNTY CIVIL 186683 CONSOLIDATED WITH CIVIL 190210 | COUNT IN CROSS BILL CITY OF LYNCHBURG CH98020219 2/08/99 | DISPOSITION OF CITY OF LYNCHBURG CIRCUIT COURT (Jefferson Litigation) CH98020219 |
|---|---|---|---|---|---|
| VII - Jefferson Breach of Contract | VIII | VIII | Summary Judgment Granted for Jefferson 10/27/99 - Docket Entry 172 Reconsideration Denied 2/23/00 - Docket Entry 221 | VII | Demurrer Sustained without Leave to Amend 1/27/00 |
| VIII - Leesburg Breach of Contract | XII | XII | Summary Judgment Granted for Leesburg As to Certain Damages 2/04/00 - Docket Entry 197 Remainder Dismissed without Prejudice 2/04/00 - Docket Entry 197 | X | Demurrer Sustained without Leave to Amend 1/27/00 |
| XI - Shenandoah Breach of Contract | IX | IX | Summary Judgment Granted for Shenandoah 10/27/99 - Docket Entry 170 Reconsideration Denied 2/23/00 - Docket Entry 221 | VIII | Demurrer Sustained without Leave to Amend 1/27/00 |