831 A.2d 465

**Brian CAMPBELL, et ux.**

v.

**LAKE HALLOWELL HOMEOWNERS ASSOCIATION.**

**No. 1197, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

June 30, 2003.

Reconsideration Denied Sept. 29, 2003.

Brian Campbell, Brookeville, for appellants.

Jason E. Fisher, Jerry Van Grack (Lerch, Early and Brewer, Chartered, on brief), Bethesda, for appellee.

Submitted before MURPHY, C.J., SONNER and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

SMITH, J.

The appellants, Brian and Elizabeth Campbell, are former residents of the Lake Hallowell community in Olney, Maryland. The appellee is the Lake Hallowell Homeowners Association.[1]

The Association filed suit against the Campbells in the Circuit Court for Montgomery County, asking that the court enjoin them from parking their car on their front or back lawns and from keeping a basketball hoop in the front portion of their property. The court granted the injunction and ordered the Campbells to pay the Association $12,500.00 in attorney's fees.

## ISSUES

In this appeal, the Campbells ask this Court to set aside the injunction and the award of attorney's fees. They argue, in essence, that:

I. The trial court erred in determining that the Association properly adopted the "Revised Architectural Control Guidelines" and properly passed the corporate resolution authorizing its recovery of attorney's fees,

II. The trial court erred in failing to determine that the Association had waived the restrictions on parking and basketball hoops by failing to enforce them consistently,

III. The trial court denied the Campbells due process of law by (A) failing to determine that they were improperly denied access to the Association's books and records, (B) permitting the Association to re-open its case in order to present additional documentary evidence, (C) permitting the Association to call as a rebuttal witness a person who had not been sequestered, and (D) accepting the testimony of a witness who lied,

---

1. Although the Campbells were represented by counsel in the trial court, they represent themselves on appeal.

IV. The trial court erred in failing to determine that the Association acted in bad faith and with unclean hands when it filed suit against the Campbells, and

V. The trial court erred in determining that the "Declaration of Covenants, Conditions and Restrictions," which created the Association and the restrictions in question, applied to the Campbells' property.

We find partial merit in the Campbells' first argument and therefore vacate the award of attorneys' fees. We shall dismiss as moot that portion of the appeal that pertains to the injunction.

## FACTS

The Lake Hallowell community is a planned community that consists of single family and town homes that were built by various developers during the 1980s. A "Declaration of Covenants, Conditions and Restrictions" for the community was filed in the Land Records Office for Montgomery County in December of 1988.

The Declaration addressed, *inter alia*, property rights, membership and voting rights, property maintenance and assessments, and architectural controls. It included the following provisions:

... Every Townhouse Lot shall be entitled to not more than two automobile parking spaces which shall be as near and convenient to said Lot as reasonably possible. The Association may permanently assign at least one automobile parking space for each Lot....

. . .

... No baby carriages, tricycles, bicycles, mopeds, motorcycles, or other articles of personal property shall be deposited, allowed or permitted to remain on any Townhouse Lot, except in the enclosed rear yard. The Association may

impound any such articles and make a charge for their return.

In addition, the Declaration stated that

the Board of Directors of the Association may appoint Architectural Committees of not less than three, nor more than five, persons to enforce the architectural controls of each community. These committees shall be charged with the duty of enforcing the following architectural controls, to wit: no building, storage shed, fence, wall or other structure, or exterior painting, shall be commenced, erected or maintained, upon the Properties, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, color and location of the same have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Architectural control committee of the community in which the structure exists....

The Declaration provided:

... The Association, or any owners, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, covenants, conditions, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration....

The Campbells purchased their town home in the Lake Hallowell community in 1990. The home had a single-car garage and a parking pad.

The Association's Board of Directors eventually appointed an Architectural Committee as contemplated by the Declaration, and in 1993 the Committee established the first "Architectural Guidelines." In 1998, the committee revised the guidelines. Copies of the "Revised Architectural Guidelines" were mailed to every member of the Association. The stated objective of the revised guidelines was to "increase resident awareness of and understanding of the [Declaration], and to

help maintain a uniform and architecturally sound appearance for the Lake Hallowell Community."

The revised guidelines set forth, *inter alia,* the following:

Recreation and play equipment includes permanent and semi-permanent equipment including the following: swing sets, gymnastic sets, volleyball nets, portable or collapsible basketball backboards, jungle gyms, etc.

. . .

Recreational equipment must be located in the rear yard or with properties with limited rear yard, in areas that cannot be seen from the street. The only exception is for basketball backboards that can be erected in front yards to allow use of existing paved driveways. Recreational equipment is not to be erected on streets, sidewalks, and/or common community areas.

. . .

Basketball hoops are permitted in single family homes only . . .

Meanwhile, in 1994, a corporate resolution regarding attorneys' fees was passed and filed with the Declaration in the Land Records Office. The resolution stated that it was:

RESOLVED AND ADOPTED this 10th day of January, 1994, that should the Lake Hallowell Homeowner's Association, through its Board of Directors, act against a homeowner to compel compliance by that homeowner with any rule, regulation, By–Law, Article or Covenant, the Lake Hallowell Homeowner's Association shall be entitled to seek and recover from the homeowner all costs, including, but not limited to, attorney's fees for compelling the homeowner's compliance with any rule, regulation, By–Law, Article or Covenant.

FURTHER RESOLVED that the Lake Hallowell Homeowner's Association may seek to enforce this rule in any court of competent jurisdiction.

In March of 2001, through a routine inspection of the community, the Association learned that the Campbells were regularly parking a car on a parking lot designated for visitor parking. The Association's Community Manager sent a letter to the Campbells, instructing them: "Please park your car on your own property. Do not use the visitor spaces." The Campbells thereafter moved the vehicle to the street in front of their home. That street was a County-designated fire lane.

In July of 2001, another routine inspection of the community was conducted and the Association learned that the car was then parked in a fire lane. It also learned that the Campbells had placed a portable basketball hoop in their driveway. The Community Manager sent another letter to the Campbells, this one stating:

A) Please remove the basketball hoop, they are not allowed on town home property. I have enclosed the page of the rules and regulations, and highlighted the language that makes this abundantly clear.

B) *Please park your car on your property.* Do not use the visitor spaces. Do not park on the street, this is a Fire Lane. In the event one of your neighbors calls the police non emergency numbers for a Fire Lane violation the ticket is at least $500.00.

(Emphasis added.)

There followed a flurry of e-mails and letters between the Campbells, the Community Manager, and counsel for the Association concerning the legal bases of the Association's demands. The Campbells pointed out in e-mails that they owned three cars but their garage and parking pad could accommodate only two. The Association suggested that the Campbells park their extra car on a public roadway just outside the community, as did some other community residents who had more than two cars.

At some point in August of 2001, apparently dissatisfied with the responses received from the Association, the Campbells parked their third car on their front lawn. Mr. Campbell admitted at trial that he knew it was "absurd" to park the car

on the lawn. He explained: "[W]e felt like we weren't getting any type of response from the Association and what we had to do is follow their directions, park our car on our property per their directions[,] in order" to get clarification as to where they could properly park.

After several weeks and several more e-mails and letters between the Campbells and the Community Manager, the Campbells moved the car from their front lawn. Within a few weeks, however, they parked it there again. On September 12, 2001, the Association filed suit against the Campbells in the circuit court seeking, *inter alia,* an injunction prohibiting them from parking the car on their lawn. The Association also requested an award of attorneys' fees.

The court immediately granted a temporary restraining order against the Campbells. It set a hearing date of October 1, 2001. The Campbells did not comply with the temporary restraining order[2], and at the October 1 hearing the court

---

2. On September 17, 2001, the Campbells moved to stay the action in the Circuit Court on the ground that they had filed a complaint against the Association with the Montgomery County Commission on Common Ownership Communities. They asserted that the Association was aware of the complaint before it filed the lawsuit, and that the Commission was the more appropriate forum for resolution of the matter.

The trial court denied the motion to stay without comment, and the Campbells do not suggest on appeal that the denial was improper. Chapter 10B of the Montgomery County Code establishes the Commission on Common Ownership Committees and authorizes the Commission to resolve disputes between homeowners. associations and members. Under § 10B-9:

(a) The Commission may hear any dispute between or among the parties.

(b) A party must not file a dispute with the Commission until the party makes a good faith attempt to exhaust all procedures or remedies provided in the association documents.

(c) However, a party may file a dispute with the Commission 60 days after any procedure or remedy provided in the association documents has been initiated before the association.

(d) After a community association finds that a dispute exists, the association must notify the other parties of their rights to file the dispute with the Commission. The Association must not take any action to enforce or implement its decision for 14 days after it notifies the other party of their rights.

issued a preliminary injunction directing that "the defendants Brian Campbell and Elizabeth Sayles Campbell shall remove the vehicle being kept on the Defendants' lawn ... and that all vehicles under their control be placed in a designated parking [area]." The court determined that another hearing should be held to resolve the request for a permanent injunction.

In response to the preliminary injunction, the Campbells removed the car from their front lawn. Three weeks later, however, they parked it on their back lawn—a grassy area that could only be accessed by driving over a common area belonging to the community. The Association then filed an amended complaint, in which it outlined the events that had transpired since the preliminary injunction had been entered. The Association sought a permanent injunction barring the Campbells from parking their car anywhere on their lawn and from keeping a basketball hoop on the front portion of the property. Again, the Association requested an award of attorneys' fees.

Trial was held on June 5, 2002. Each side called two witnesses, and dozens of exhibits were offered into evidence.

---

(e) When a dispute is filed with the Commission, a community association must not take any action to enforce or implement the association's decision, *except filing a civil action under subsection (f),* until the process under this Article is completed.

(f) Any party may file a civil action arising out of an association document or a law regulating the association's powers and procedures at any time. The court *may* stay all proceedings for at least 90 days after the court is notified that a dispute has been properly filed under this Article so that [an administrative hearing by the Commission] may be completed. *Whether or not a stay is issued, the court may hear the action de novo only if a hearing panel assigned to the dispute has not issued a decision....*

(Emphasis added).

The Campbells have included in the record extract a portion of the Commission's decision, which was reached after judgment was entered by the trial court. Because the decision was not part of the trial record, its inclusion in the record extract is improper. *See* Md. Rule 8–501(c). We nevertheless observe that the document reveals that the Commission determined that the Association improperly barred the Campbells from parking their car in the visitors' lot and improperly barred them from keeping a basketball hoop in their *back* yard.

One of the witnesses for the Association, Ed Thomas, was an agent of the company that managed the community on behalf of the Association. Surprisingly, Thomas testified that the Campbells would have been permitted to park their car in the visitors' parking lot all along, provided they moved it at least once a week. Thomas admitted that no one connected with the Association shared this information with the Campbells until two weeks before trial.

Mr. Campbell testified to the effect that he believed the Association was treating his family differently than it treated other homeowners. In his view, the Association was requiring his family to follow rules and regulations that it bent for other homeowners, and was interpreting rules and regulations to prohibit actions that were not truly prohibited. Mr. Campbell explained that he and his wife had two young children, while the vast majority of families on his street were childless. He theorized that that was the reason for the perceived disparate treatment.

At the close of trial, the court found in the Association's favor. It granted the permanent injunction as requested by the Association and awarded damages representing attorneys' fees. Although the Association had presented evidence that it spent $33,000.00 on attorneys' fees, the court ordered the Campbells to pay $12,500.00.

The Campbells then filed this appeal. At some point thereafter, they sold their home and moved out of the Lake Hallowell community.

## DISCUSSION

The Association argues that, because the Campbells no longer live in the community, their appeal as it pertains to the injunction against them is moot. "A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy." *Coburn v. Coburn*, 342 Md. 244, 250, 674 A.2d 951, 954 (1996). "This Court in rare instances, however, may address the merits of a moot case if

we are convinced that the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct." *Id.* This case does not involve matters of important public concern. Now that the Campbells have moved from the Lake Hallowell community, there is no reason for us to resolve whether they were properly barred from parking their car on their lawn or keeping a basketball hoop in the front portion of their property.

■ As the parties agree, however, the award of attorneys' fees is not moot. We therefore address so much of the appeal as is necessary to determine the propriety of that award. We find that the matter may be resolved based upon an argument made by the Campbells in connection with the first issue they have raised.

The Campbells contend that the Corporate Resolution which authorized the recovery of attorneys' fees by the Association was not properly passed. They point to the following provision in the Declaration of Covenants, Conditions, and Restrictions:

> ... This declaration may be amended during the first thirty (30) year period by an instrument signed by not less than ninety percent (90%) of the Lot Owners, and thereafter by an instrument signed by not less than seventy-five percent (75%) of the Lot Owners. Any such instrument shall become effective upon recordation.

The corporate resolution authorizing the Association to recover attorneys' fees was indeed an amendment to the Declaration. As we have indicated, the Declaration expressly provided that "the Association, or any owners, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, covenants, conditions, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration." The resolution regarding attorneys' fees had a direct bearing upon that provision.

Witness Ed Thomas conceded at trial that the homeowners were not given the opportunity to vote upon the resolution.

Rather, the resolution was discussed at several Association meetings, and homeowners were permitted to express their views. Although some opposition was voiced, the resolution was ultimately approved and signed by the five members of the Association's Board of Directors.

The resolution was not filed in the Land Records Office as required by the Declaration, moreover. *See* Md.Code (1974, 1996 Repl. Vol., 2002 Cum.Supp.), § 11B–101(k) of the Real Prop. Art. (defining "Recorded covenants and restrictions," for purposes of the Maryland Homeowners Association Act, as "any instrument of writing which is *recorded in the land records* of the jurisdiction within which a lot is located, and which instrument governs or otherwise legally restricts the use of such lot" (emphasis added)). It was instead placed on file at the County's Homeowners Association Depository. *See* Code (1974, 1996 Repl.Vol.), § 11B–113(c) of the Real Prop. Art. (setting forth requirement that homeowners associations keep certain documents on file, "separate from land record[s]," at depositories in County court buildings).

▮▮▮▮ Absent a proper amendment to the Declaration of Covenants, Conditions, and Restrictions, there was no basis for the award of attorneys' fees. As the Court of Appeals has summarized:

> The "American Rule" is that attorney's fees are ordinarily not recoverable by a prevailing party in a lawsuit.... "In Maryland, 'the general rule is that costs and expenses of litigation, other than the usual and ordinary Court costs, are not recoverable in an action for [compensatory] damages.'"
>
> . . .
>
> Attorney's fees may be awarded where a statute allows for the imposition of such fees, ... and where parties to a contract have an agreement regarding attorney's fees....

*Hess Constr. Co. v. Bd. of Educ. of Prince George's County*, 341 Md. 155, 159–60, 669 A.2d 1352, 1354 (1996) (citations omitted). Here, the award of attorneys' fees was authorized by neither statute nor agreement. The award was therefore improper.

JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY VACATED AS TO AWARD OF AT-TORNEYS' FEES; REMAINING ISSUES ON APPEAL DISMISSED AS MOOT.

APPELLEE TO PAY THE COSTS.