KRAUSER, J.
 

 The principal parties to this dispute are a homeowners’ association and a homeowner. Their quarrel, which began over a basketball hoop and a parking space, has resulted in at least four separate actions, with an intimation of more to come. At a loss as to why so little has generated so much conflict, we can only surmise that we are in the middle of what may be the litigatory equivalent of road rage. The number of actions, the sheer ferocity with which they have been pursued, and the inconsequential nature of what has been sought offer us little hope that we are wrong in this assessment.
 

 Whatever the driving force behind this battery of cases, this appeal does present important questions as to the applicability of the collateral estoppel doctrine where an appeal is pending or where an appeal is subsequently dismissed as moot, questions which have not heretofore been fully addressed by our appellate courts.
 

 
 *511
 
 To answer these and other questions posed by the parties to this appeal, we must delve into the three other actions between them, which we shall designate, to avoid confusion: the “administrative action,” the “injunction action,” and the “peace order action.” The instant action, on the other hand, defies facile labels. It combines a derivative action and claims of malicious use of process and abuse of process. It began when appellant Brian Campbell, the homeowner, filed a complaint against his homeowners association, appellee Lake Hallowell Homeowners Association and its Board of Directors, which we shall hereafter collectively refer to as the “Association” and its president, appellee Phillip D. Peters, in the Circuit Court for Montgomery County. That complaint contained three counts: a “derivative action” against the Association and the Board, and claims for malicious use of process and abuse of process against Peters.
 

 Appellees responded by filing a motion requesting dismissal of the complaint or, in the alternative, summary judgment as to all three counts. That motion met with only partial success. While the court dismissed the abuse of process claim against Peters, it denied the motion as to the other claims.
 

 After the discovery deadline, imposed by the circuit court, had passed, appellant moved to compel the Association to produce documents that the Montgomery County Commission on Common Ownership Communities (“Commission”) had ordered were to be made available to appellant in one of the other actions between the parties. When that motion was denied, appellees renewed their motion for summary judgment. This time, they were more successful. Granting that motion in its entirety, the circuit court entered judgment in favor of appellees as to all counts.
 

 From that judgment, appellant noted this appeal pro
 
 se,
 
 presenting two questions, which we have set forth below as they appear in appellant’s brief:
 

 I. Did the trial court err in entering summary judgment as to, or dismissing, any of the counts brought against the Association by appellant?
 

 
 *512
 
 II. Did the trial court err in denying Campbell’s motion, and/or denying Campbell’s request for a hearing on Campbell’s motion, to compel the Association to comply with the Commission’s order?
 

 For the reasons that follow, we shall affirm the judgment of the circuit court.
 

 Prior Litigation
 

 In 1990, appellant purchased a townhouse in the Lake Hallowell Community, a planned community in Olney, Maryland. By virtue of that ownership, appellant was, until he sold his property in 2002, a member of the Lake Hallowell Homeowners Association.
 

 While appellant was living in the Lake Hallowell Community, a dispute arose between appellant and the Association as to where appellant was permitted to park his car. Upon learning that appellant and his family were parking their car in an overflow parking lot designated for visitors, the Association informed appellant that he was not permitted to park there. To comply with that directive, appellant began parking his car elsewhere. Unfortunately, the “elsewhere” was a “fire lane” in front of his townhouse. The Association advised appellant that his new choice of a parking space—the fire lane—was even less acceptable than his previous selection. By letter, the Association requested, “[pjlease park your car on your property.” It should have been more specific. Appellant complied and parked his car on his front lawn—which, we are confident, was not what the Association had in mind.
 

 Unfortunately, the discord between the parties did not end here. Indeed, it was only the first battle in what was to become a war. Appellant next placed a basketball hoop on his front lawn. The hoop, the Association claimed, violated the community’s architectural guidelines prohibiting the installation of basketball hoops in front of townhouses, and it demanded that appellant remove both his car and basketball hoop from his front lawn. That demand, to no one’s surprise, went unheeded.
 

 
 *513
 
 On September 11, 2001, appellant filed a complaint against the Association with the Montgomery County Commission on Common Ownership Communities (the “administrative action”). The record does not disclose the details of the complaint but the Commission’s order lists the four issues that were before it: (1) “Does the Fire Lane Establishment Order of November 16, 1990, Order No. DFRS 39-90, prohibit [appellant] from parking [on the street in front of his townhouse]?”; (2) “May the Association prohibit the Complainants from parking in the 25 overflow spaces on Dumfries Circle as well?”; (3) “Do the documents of the Association, specifically the Declaration of Covenants and/or the revised Architectural Control Guidelines effective November 1, 1998, prohibit [appellant] from maintaining the movable, collapsible basketball goal in the front yard of [his] townhouse?”; and (4) “Has the Association improperly denied or limited [appellant’s] right to inspect the books, records and papers of the Association”?
 

 Following a hearing, the Commission found that the Association had properly prohibited appellant from parking his vehicle in the fire lane, but that nothing in the Association’s rules, regulations, or guidelines prohibited appellant from parking in the overflow visitors’ parking lot. It further found that the Association’s Declaration of Covenants, Conditions and Restrictions prohibited appellant from placing a basketball hoop in his front yard. On the other hand, it agreed with appellant that the Association had improperly denied him access to its records. The Commission declared that the Association had “crossed the line” by “constructively precluding] inspection of [the Association’s records] through charging a substantial fee” to inspect those records. It therefore ordered the Association to permit appellant “to inspect all of [its] books, records and papers ... without restriction as to date,” subject to the payment by appellant of reasonable copying fees and costs.
 

 On September 12, 2001, one day after appellant filed his complaint with the Commission, the Association filed suit against appellant in the Circuit Court for Montgomery County seeking an injunction to enjoin him from parking his car on his
 
 *514
 
 front lawn and placing a basketball hoop in front of his townhouse (the “injunction action”) and requesting an award of attorneys’ fees. Granting the Association’s request for injunctive relief, the circuit court issued a temporary injunction ordering appellant and his wife to “remove the vehicle” and to place “all vehicles under their control ... in a designated parking [area].” Three weeks after the issuance of that injunction, appellant chose a new location for his vehicle—his backyard.
 

 At the trial of the injunction action, Ed Thomas, the Association’s agent, testified that appellant “would have been permitted to park his car in the visitors’ lot all along, provided he moved it at least once a week,” but admitted that the Association had not conveyed this information to appellant until two weeks before trial. When appellant had his chance to testify, he attributed the actions of the Association to a desire to discriminate against him and his family because he had two young children while most of the homeowners in the community were childless. The Association, he claimed, “bent” the rules for other homeowners, but strictly applied them to him and his family, even to the extent of “interpreting the rules and regulations to prohibit actions that were not truly prohibited.”
 

 Dismissing appellant’s claim as “bizarre,” the circuit court granted the Association’s request for a permanent injunction requiring appellant to refrain from parking on his lawn and to remove his basketball hoop from his front yard. The circuit court found:
 

 [T]he covenants do apply to [appellant] and his wife and that the ... architectural guidelines do apply to him, and they clearly discussed the basketball issue[.] I think it is certainly worth saying that the ... actual words in the covenants are not specific, but their intent is clear, the intent being you don’t park your car on the grass and you don’t put a basketball hoop in the front of the yard, it is as clear as it can be.
 

 
 *515
 
 It further ordered appellant to pay the Association $12,500.00 in attorneys’ fees.
 

 Appellant noted an appeal to this Court but, before argument, moved out of the Lake Hallowell Community. That act of relocation, we held, rendered his appeal moot, leaving only the issue of attorneys’ fees for our consideration.
 
 Campbell v. Lake Hallowell Homeowners Ass’n,
 
 152 Md.App. 139, 148-49, 831 A.2d 465,
 
 cert. denied,
 
 378 Md. 614, 837 A.2d 926 (2003).
 

 In addressing that issue, the Association asserted that the award was lawful because it was authorized by resolution to recover attorneys’ fees incurred in enforcing community regulations and covenants.
 
 Id.
 
 at 144, 831 A.2d 465. We disagreed, observing that the Association’s membership had never voted on that resolution and that it had not been filed in the Montgomery County Land Records Office as required by the Community’s Declaration of Covenants, Conditions, and Restrictions.
 
 Id.
 
 at 150, 831 A.2d 465. We further noted that, “ ‘[i]n Maryland, the general rule is that costs and expenses of litigation, other than the usual and ordinary Court costs, are not recoverable in an action for [compensatory] damages’ ” but that “[attorney’s fees may be awarded where a statute allows for the imposition of such fees, ... and where parties to a contract have an agreement regarding attorney’s fees.”
 
 Id.
 
 (quoting
 
 Hess Constr. Co. v. Bd. of Educ.,
 
 341 Md. 155, 159-60, 669 A.2d 1352 (1996) (citations omitted)). Finding that “the award of attorneys’ fees was authorized by neither statute nor agreement,” we vacated the circuit court’s award of attorneys’ fees.
 
 Id.
 
 at 151, 831 A.2d 465.
 

 While the administrative and injunction actions were still pending, Peters filed a petition in the District Court for Montgomery County requesting that the court issue an ex parte temporary peace order, prohibiting appellant from any further contact with Peters or his family (“peace order action”). Peters alleged that appellant was stalking and harassing him and his family. The district court granted Peters’ request and issued an order, directing appellant to refrain from having any contact with Peters or his family and to stay
 
 *516
 
 away from Peters’ residence, place of employment, and Ms cMldren’s school, which appellant’s cMldren also attended. A hearing on the petition followed. When that hearing ended, the district court issued a peace order, which largely incorporated restrictions imposed by the ex parte order
 
 [1]
 
 but also required appellant to participate in any anger management and psychiatric or psychological counseling deemed necessary by the Montgomery County Department of Health and Human Services.
 

 From that order, appellant noted an appeal to the circrnt court. Finding that there was “no evidence presented to support the allegations of stalking or harassment,” the circuit court vacated the peace order. That action prompted appellant to move for sanctions. Claiming that Peters filed the petition for a peace order in bad faith and without substantial justification, appellant requested an award for counsel fees and costs. The circuit court denied that motion, stating that it “[did] not find that there was bad faith and a lack of substantial justification in the filing and prosecution of the Petition for Protective Order.” It added that “sanctions [were] not appropriate in a matter that went to hearing in both the District and Circuit Courts for Montgomery County, Md, after which the hearing judges reached opposite conclusions.” “On this basis alone,” the circuit court opined, “there was clearly a colorable claim.”
 

 The Instant Case
 

 Appellant filed a complaint against the Association, the Board, and Peters in the Circuit Court for Montgomery County. That complaint contained three counts.
 

 The first count was a derivative action against the Association. It alleged that the counsel fees incurred by the Association in pursuit of an injunction against appellant “[was] not in the interest of the [Association] and [was] detrimental to the same” and that it was “fruitless and futile for [appellant] to
 
 *517
 
 make a demand upon the Board of Directors” to correct these expenditures.
 

 The second count was an abuse of process claim against Peters. It alleged that Peters had obtained a peace order with the “ulterior motive” of “preventing appellant from attending, presenting his position, and/or otherwise exercising his rights at meetings of the ... Association.” And the third and final count was a malicious use of process claim against Peters. It alleged that Peters had maliciously sought the issuance of the peace order against appellant, that he did not have probable cause to do so, and that, as a result, he had been “damaged” by appellant; the nature of those damages was not spelled out.
 

 Appellees responded by filing a motion requesting dismissal of the complaint or, in the alternative, summary judgment as to all counts. Granting that motion in part, the circuit court dismissed appellant’s abuse of process claim against Peters, but granted him leave to amend that count. Appellant did, but to no avail as the circuit court again dismissed that count.
 

 Appellant then filed a “Motion to Compel Fulfillment of Discovery Requests.” In that motion, he asked, among other things, that the circuit court compel the Association to make available to him certain records that he claimed he had requested and that the Commission had ordered the Association to produce in the administrative action. Finding that appellant had “not complied] with the applicable rules of procedure,” the circuit court denied the motion.
 

 On the day of trial, appellees moved for summary judgment as to the remaining two counts. The circuit court granted that motion and entered judgment in favor of the Association and Peters.
 

 I
 

 Appellant contends that the circuit court erred in dismissing the abuse of process claim against Peters and granting summary judgment in favor of the Board on the derivative action and in favor of Peters on the malicious use of process claim.
 
 *518
 
 We begin our review of these contentions by first addressing appellant’s claim that summary judgment should not have been granted as to his derivative action.
 

 Derivative Action
 

 The circuit court granted summary judgment in favor of the Association as to appellant’s derivative action on the grounds that it was barred by collateral estoppel. The court erred, appellant claims, because that defense was waived by the Association and it was, in any event, not applicable to his claim.
 

 In reviewing a grant of summary judgment, we turn first to the rule that governs such decisions, Maryland Rule 2-501. Th$t rule provides: “Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law.” Md. Rule 2-501. Thus, our task is to determine if there is a “genuine dispute of material fact” and, if not, whether the moving party “is entitled to judgment as a matter of law.”
 
 Id.
 

 “In determining whether a genuine dispute of material fact exists and, if not, what the ruling of law should be, the court examines the pleadings, admissions, and affidavits, etc., resolving all inferences to be drawn therefrom against the moving party.”
 
 Gross v. Sussex, Inc.,
 
 332 Md. 247, 256, 630 A.2d 1156 (1993) (citations omitted). “In other words, all inferences must be resolved against the moving party when determining whether a factual dispute exists, even when the underlying facts are undisputed.”
 
 Id.
 
 But, we caution, “the mere existence of a scintilla of evidence in support of the plaintiffs’ claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the plaintiff.”
 
 Beatty v. Trailmaster Prods., Inc.,
 
 330 Md. 726, 738-39, 625 A.2d 1005 (1993).
 

 Finally, “[i]n reviewing [the circuit court’s] decision to grant a motion for summary judgment, we evaluate ‘the same material from the record and decide[ ] the same legal issues as the
 
 *519
 
 circuit court.’ ”
 
 Crews v. Hollenbach,
 
 126 Md.App. 609, 624, 730 A.2d 742 (1999), aff'd, 358 Md. 627, 751 A.2d 481 (2000) (quoting
 
 Lopata v. Miller,
 
 122 Md.App. 76, 83, 712 A.2d 24 (1998)). Indeed, “an appellate court ordinarily may uphold the grant of a summary judgment only on the grounds relied on by the trial court.”
 
 Ashton v. Brown,
 
 339 Md. 70, 80, 660 A.2d 447 (1995).
 

 Having reviewed when summary judgment is appropriate, we turn to the question of whether summary judgment was appropriate in this instance. In doing so, we shall consider only the ground upon which that judgment was granted: that it was barred by collateral estoppel.
 

 “ ‘When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the doctrine of collateral estoppel renders that determination conclusive in a subsequent action between the parties, whether on the same or a different claim.’ ”
 
 Janes v. State,
 
 350 Md. 284, 295, 711 A.2d 1319 (1998) (quoting
 
 Murray Int’l Freight Corp. v. Graham,
 
 315 Md. 543, 547, 555 A.2d 502 (1989)). To invoke the doctrine of collateral estoppel,
 

 “[t]he proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.”
 

 Thacker v. City of Hyattsville,
 
 135 Md.App. 268, 288-89, 762 A.2d 172 (2000) (quoting
 
 Sedlack v. Braswell Servs. Group,
 
 134 F.3d 219, 224 (4th Cir.1998)).
 

 Appellant argued in the injunction action that the Association was motivated, not by a wish to enforce the community’s covenants, rules, and regulations, but by a desire to discriminate against him because he had children. The circuit court
 
 *520
 
 rejected that argument, characterizing it as “bizarre.” It then granted the Association’s request for injunctive relief and “order[ed] that [appellant and his wife] not park any of their motor vehicles ... on the grass in front or in the rear of their home, [and] that they remove the basketball hoops from the front of the property.”
 

 Having lost in the injunction action, appellant raises the same issue in the instant case. This time, however, he casts it in the form of a “derivative action.” In pleading that action, appellant argues, once again, that the Association was motivated by a discriminatory intent in bringing the injunction action against him. But, instead of asking that the injunctive relief requested be denied, he seeks “to the use of all members” of the Association, legal fees and costs incurred in the prosecution of that action. Thus, the underlying issue in both cases is the same: whether the Association’s actions were prompted by an unlawful discriminatory intent or by a lawful desire to enforce community covenants, rules, and regulations. Indeed, appellant conceded as much below.
 
 [2]
 

 As there is no dispute that this issue was “a critical and necessary part of the decision in the prior proceeding” and that appellant had a “full and fair opportunity to litigate the issue in the previous forum,” only one question remains before we can conclude that the derivative action was, as found below, barred by collateral estoppel. That question, compound and complicated, is whether the finality of the judgment rendered
 
 *521
 
 in the injunction action was vitiated by either the filing of an appeal or the dismissal of that appeal as moot. To answer that question, we begin by summarizing the litigatory events leading up to the dismissal of the derivative action.
 

 After the Association filed the injunction action, seeking the removal of the basketball hoop and appellant’s car, appellant filed a three count complaint in the instant case. Twelve days after the Association answered that complaint, the circuit court granted the Association’s request for injunctive relief. Challenging that decision, appellant noted an appeal.
 

 That appeal was decided one week before trial commenced in the instant case. In a reported opinion, this Court dismissed all of the issues of that appeal, relating to the injunction, as moot. We explained: “Now that the Campbells have moved from the Lake Hallowell community, there is no reason for us to resolve whether they were properly barred from parking their car on their lawn or keeping a basketball hoop in the front portion of their property.”
 
 Campbell,
 
 152 Md.App. at 149, 831 A.2d 465. But the mandate of this Court was not issued until after the circuit court granted summary judgment in favor of the Association. Consequently, under Maryland Rule 8-606(a), the appeal was still technically pending when summary judgment was entered in the instant case. That rule provides that “[a]ny disposition of an appeal, including a voluntary dismissal, shall be evidenced by the mandate of the Court, which shall be certified by the Clerk under the seal of the Court and shall constitute the judgment of the Court.” Md. Rule 8-606(a).
 

 The finality of a judgment on appeal for purposes of res judicata and collateral estoppel remains, as of today, an open question in Maryland,
 
 In re Cmty. Mgmt. Corp. of Md. v. Weitz,
 
 288 B.R. 104, 110 (D.Md.2002),
 
 aff'd,
 
 Docket No. 03-1020, 2003 WL 22952624 (4th Cir., Dec.16, 2003) (unpublished table decision);
 
 Badders v. Uhler,
 
 233 Md. 441, 442-43, 197 A.2d 120 (1964);
 
 Davis v. Frederick County Bd. of County Comm’rs,
 
 25 Md.App. 68, 73 n. 4, 334 A.2d 165 (1975), though that issue was addressed by the United States Supreme Court
 
 *522
 
 more than a century ago. In
 
 Deposit Bank of Frankfort v. Board of Councilmen,
 
 191 U.S. 499, 514, 24 S.Ct. 154, 48 L.Ed. 276 (1903), the Supreme Court held that a final judgment of a federal trial court is conclusive, for purposes of res judicata, until that judgment is modified or reversed. And that rule has defied the vagaries of time. As the United State Court of Appeals for the Federal Circuit recently observed: “[T]he established rule in the federal courts [is] that a final judgment retains all of its res judicata consequences pending decision of the appeal.... ”
 
 Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,
 
 170 F.3d 1373, 1381 (Fed.Cir.1999) (quoting
 
 Warwick Corp. v. Md. Dept. of Transp.,
 
 573 F.Supp. 1011, 1014 (D.Md.1983),
 
 aff'd,
 
 735 F.2d 1359 (4th Cir.1984) (mem.)).
 

 Moreover, this rule—that a pending appeal does not affect the finality of a judgment—is now “followed by a majority of the states.”
 
 O’Brien v. Hanover Ins. Co.,
 
 427 Mass. 194, 692 N.E.2d 39, 44 (1998).
 
 See, e.g., Cashion v. Torbert,
 
 No. 1020449, 2003 WL 22026396, at *6-7 (Ala. Aug.29, 2003);
 
 Wyatt v. Wyatt,
 
 65 P.3d 825, 831 (Alaska 2003);
 
 Ariz. Downs v. Sup.Ct.,
 
 128 Ariz. 73, 623 P.2d 1229, 1232 (Ariz.1981);
 
 Dean Witter Reynolds, Inc. v. Hartman,
 
 911 P.2d 1094, 1098 n. 5 (Colo.1996) (dictum);
 
 Carnemolla v. Walsh,
 
 75 Conn.App. 319, 815 A.2d 1251, 1257 (2003),
 
 cert. denied,
 
 263 Conn. 913, 821 A.2d 768 (2003);
 
 Maldonado v. Flynn, 417
 
 A.2d 378, 384 (Del.Ch.1980);
 
 Patton v. Klein,
 
 746 A.2d 866, 869 n. 6 (D.C. 1999);
 
 Capital Assur. Co. v. Margolis,
 
 726 So.2d 376, 377 (Fla.Ct.App.1999);
 
 In re Estate of Barth,
 
 339 Ill.App.3d 651, 275 Ill.Dec. 84, 792 N.E.2d 315, 328 (2003);
 
 Jones v. Am. Family Mut. Ins. Co.,
 
 489 N.E.2d 160, 166 (Ind.Ct.App.1986);
 
 Johnson v. Ward,
 
 265 N.W.2d 746, 749 (Iowa 1978);
 
 Roberts v. Wilcox,
 
 805 S.W.2d 152, 153 (Ky.Ct.App.1991);
 
 Bartlett v. Pullen,
 
 586 A.2d 1263, 1265 (Me.1991);
 
 Am. Druggists Ins. v. Thompson Lumber Co.,
 
 349 N.W.2d 569, 572 (Minn.Ct.App.1984);
 
 Norman v. Bucklew,
 
 684 So.2d 1246, 1254-55 (Miss. 1996);
 
 Patrick v. Koepke Constr., Inc.,
 
 119 S.W.3d 551, 557 (Mo.Ct.App.2003);
 
 Peterson v. Neb. Nat. Gas Co.,
 
 204 Neb. 136, 281 N.W.2d 525, 527 (1979);
 
 Brunacini v. Kavanagh,
 
 117
 
 *523
 
 N.M. 122, 869 P.2d 821, 827-28 (N.M.Ct.App., 1993);
 
 In re Amica Mut. Ins. Co., 85
 
 A.D.2d 727, 445 N.Y.S.2d 820, 822 (N.Y.App.Div.1981);
 
 Cully v. Lutheran Med. Center,
 
 37 Ohio App.3d 64, 523 N.E.2d 531, 532 (Ohio Ct.App., 1987);
 
 Lee v. Mitchell,
 
 152 Or.App. 159, 953 P.2d 414, 420 n. 11 (1998);
 
 Shaffer v. Smith,
 
 543 Pa. 526, 673 A.2d 872, 874-75 (1996);
 
 Silva v. Silva,
 
 122 R.I. 178, 404 A.2d 829, 832 (1979);
 
 Scurlock Oil Co. v. Smithwick,
 
 724 S.W.2d 1, 6 (Tex.1986);
 
 State v. Harrison,
 
 148 Wash.2d 550, 61 P.3d 1104, 1110 (2003);
 
 Town of Fulton v. Pomeroy,
 
 111 Wis. 663, 87 N.W. 831, 833 (Wis. 1901).
 

 A minority of states, on the other hand, have concluded that a lower court judgment is not “final” for purposes of res judicata or collateral estoppel when it is on appeal.
 
 [3]
 

 See, e.g., People ex rel. Gow v. Mitchell Bros.’ Santa Ana Theater,
 
 161 Cal.Rptr. 562, 568 (Cal.Ct.App.1980);
 
 Greene v. Transp. Ins. Co.,
 
 169 Ga.App. 504, 313 S.E.2d 761, 763 (Ga.Ct.App.1984);
 
 Dupre v. Floyd,
 
 825 So.2d 1238, 1240-41 (La.Ct.App.2002) (per curium),
 
 writ denied,
 
 840 So.2d 546 (La.2003);
 
 Petition of Donovan,
 
 137 N.H. 78, 623 A.2d 1322, 1324 (N.H.1993);
 
 Benham v. Plotner,
 
 795 P.2d 510, 512 (Okla.1990);
 
 McBurney v. Aldrich,
 
 816 S.W.2d 30, 34 (Tenn.Ct.App.1991);
 
 Faison v. Hudson,
 
 243 Va. 413, 417 S.E.2d 302, 305 (1992);
 
 Jordache Enters., Inc. v. Nat’l Union Fire Ins. Co. of Pittsburgh,
 
 204 W.Va. 465, 513 S.E.2d 692, 703 (1998).
 

 This “split of authority” reflects the tug of conflicting policy considerations: On the one hand, the rule that “the pendency of the appeal prevents a judgment from operating as a res judicata” may “ ‘enable! ] one against whom a judgment is entered to avoid its force for a considerable period of time merely by taking an appeal.’ ” E.H. Schopler,
 
 Judgment as res judicata pending appeal or motion for a new trial, or during
 
 
 *524
 

 the time allowed therefor,
 
 9 A.L.R.2d 984 § 2 (1950) (quoting 2 A.C. Freeman,
 
 Law of Judgments
 
 1526 (5th ed.1925)). But, on the other hand, the rule that the pendency of an appeal does not prevent a judgment from operating as a res judicata may permit an erroneous judgment, facing certain reversal, to be used to preclude further inquiry into a key issue, before reversal, “ ‘and thereby lead to another judgment, from which it may be impossible to obtain relief notwithstanding such reversal.’ ”
 
 Id.
 
 (quoting Freeman,
 
 supra,
 
 at 1528).
 

 Nonetheless, a broad consensus has emerged that the pendency of an appeal should not suspend the operation of a judgment for purposes of res judicata or collateral estoppel. This view is, in the words of Comment f to the Restatement (Second) of Judgments, “[t]he better view.”
 
 Restatement (Second) of Judgments
 
 § 13(f) (1982). And we agree. As one legal commentator has pointed out:
 

 Despite the manifest risks of resting preclusion on a judgment that is being appealed, the alternative of retrying the common claims, defenses, or issues is even worse. All of the values served by res judicata are threatened or destroyed by the burdens of retrial, the potential for inconsistent results, and the occasionally bizarre problems of achieving repose and finality that may arise.
 

 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18A
 
 Federal Practice and Procedure
 
 § 4433, at 94 (2d ed.2002).
 

 Indeed, to strip a judgment of its preclusive effect merely because an appeal is pending, in our view, undermines the very purpose of the doctrine of res judicata, which is “to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.”
 
 Janes,
 
 350 Md. at 295, 711 A.2d 1319.
 

 The United States District Court for the District of Maryland has further observed:
 

 If a judgment was denied its
 
 res judicata
 
 effect merely because an appeal was pending, litigants would be able to
 
 *525
 
 refile an identical case in another trial court while the appeal is pending, which would hog-tie the trial courts with duplicative litigation. If the plaintiff wants to appeal the decision of a trial court, the appropriate course is to ... appeal the ruling in the state appellate court.
 

 Warwick Corp.,
 
 573 F.Supp. at 1014.
 

 Moreover, if the pendency of an appeal prevented a judgment from having a res judicata effect, litigants would be encouraged to file meritless appeals to obtain a second chance to relitigate the same issue or to delay the imposition of a valid judgment. And, finally, the danger that an erroneous judgment will affect the rights of the parties in subsequent and related litigation, while an appeal of that judgment is pending, is avoidable. In an appropriate case, the trial court in the second proceeding may simply stay that proceeding, pending appellate review of the judgment, whose validity is at issue.
 
 See
 
 1A C.J.S.
 
 Actions
 
 § 249a, at 735 (1985) (“Where two actions are pending, and a decision in the prior one will adequately determine the rights of the parties, the second action may be stayed until the first is determined, and the same rule applies where the prior action is pending on appeal____”).
 

 We stress that we are not suggesting that the mere pendency of an appeal should necessarily cause a trial court in a subsequent proceeding, in which some of the same issues arise, to stay that proceeding, upon a party’s request to do so. In fact, no stay should be issued until the trial court has “balanc[ed] the competing interests” at stake and determined that a stay will not “work injustice.”
 
 Id.
 
 § 244, at 725. If, for example, a second action “presents claims or issues that must be tried regardless of the outcome of the first action and there are cogent reasons to fear the effects of delay,” then a stay of that action would be, under most circumstances, inappropriate.
 
 See 18A
 
 Wright, Miller & Cooper, supra, § 4433, at 94.
 

 For these reasons, we hold that the pendency of an appeal does not affect the finality of a judgment for res judicata purposes. But this does not end our inquiry. The
 
 *526
 
 appeal of the judgment at issue has an added wrinkle: it was dismissed as moot. Consequently, we must now consider whether a dismissal of an appeal for mootness vitiates the preclusive effect of the underlying judgment.
 

 The Court of Appeals has held that it does. In
 
 Murray International,
 
 315 Md. 543, 555 A.2d 502, the Court of declared that “ ‘[w]here a party to a judgment cannot obtain the decision of an appellate court because the matter determined against him is ... moot, the judgment is not conclusive against him in a subsequent action on a different cause of action.’ ”
 
 Id.
 
 at 552 n. 5, 555 A.2d 502 (quoting
 
 Restatements of Judgments
 
 § 69(2) (1942)). But that rule, as the United States Court of Appeals for the First Circuit noted, has exceptions. In
 
 Gelpi v. Tugwell,
 
 123 F.2d 377 (1st Cir.1941), the First Circuit held that collateral estoppel still attaches when the party against whom the defense is raised is the party who causes the case to become moot.
 
 See id.
 
 at 378. And that, of course, is what occurred here. Appellant moved out of the Lake Hallowell Community and thereby rendered his own appeal moot. Hence, we hold that he may not now avoid the preclusive effect of the circuit court judgment.
 

 But even if that is so, the Association’s defense of collateral estoppel must fail, appellant insists, because it runs afoul of Rule 2-323. That rule requires that affirmative defenses be raised by answer not, as here, by motion or other litigatory devices. Having failed to raise collateral estoppel in its initial answer or any amended version of that answer, as required by Rule 2-323(g), the Association, appellant argues, waived that defense.
 

 “Rule 2-323 provides that all defenses of law or fact to claims filed must be asserted in an answer. Subsection (g) enumerates various affirmative defenses, including collateral estoppel and
 
 res judicata,
 
 that must be ‘set forth by separate defenses.’ ”
 
 Boyd v. Bowen,
 
 145 Md.App. 635, 654, 806 A.2d 314 (2002) (quoting Md. Rule 2-323). As this Court stated in
 
 Gooch v. Maryland Mechanical Systems, Inc.,
 
 81 Md.App. 376, 384-85, 567 A.2d 954 (1990): “The requirement that
 
 *527
 
 affirmative defenses be set forth separately is not a mere nicety; it is designed to give notice to the plaintiff of the defenses asserted to his complaint.” Furthermore, “[t]his rule prevents unfair surprise and enables a plaintiff to concentrate the focus of his discovery.”
 
 Id.
 
 at 385, 567 A.2d 954. For that reason, “the failure of a defendant to include an affirmative defense in its original answer or a properly amended answer bars the defendant from relying on the defense to obtain judgment in its favor.”
 
 Id.
 

 When the Association filed its answer in this action, it did not assert the defense of collateral estoppel. It was not until June 23, 2003, at a hearing on its motion to quash appellant’s subpoenas, that it even suggested that the derivative action was barred by collateral estoppel. Two weeks later, on July 7, 2003, the first day of trial, the Association moved for summary judgment on that ground.
 

 But the Association’s failure to raise the defense of collateral estoppel, at the time it filed its answer to appellant’s complaint, is understandable: It filed its answer in the instant case two weeks before the circuit court rendered a decision in the injunction case and thus, that defense was not available to the Association at the time that it filed its answer. That of course does not explain or justify the Association’s failure to subsequently amend its answer to include the defense of collateral estoppel under Maryland Rule 2-341.
 

 That rule permits a party to amend its pleading “at any time prior to 15 days of a scheduled trial date.” Md. Rule 2-341(a). Even within that fifteen day period, a party may amend its pleading with leave of the court or with the written consent of the adverse party. Md. Rule 2-341(b). An amendment to a pleading may, among other things, “set forth transactions or events that have occurred since the filing of the pleading sought to be amended,” Md. Rule 2-341(c)(3), and “change the nature of the action or defense.” Md. Rule 2-341(c)(1). “Amendments shall be freely allowed,” the rule states, “when justice so permits.” Md. Rule 2-341(e). The
 
 *528
 
 Association therefore could have amended its answer to include the defense of collateral estoppel before trial.
 

 We nonetheless conclude that the circuit court did not err in granting summary judgment in favor of the Association on that ground. The Supreme Court has held that in “special circumstances[,][m]ost notably, ‘if a court is on notice that it has previously decided the issue presented, the court may dismiss the action
 
 sua sponte,
 
 even though the defense has not been raised.’ ”
 
 Arizona v. California,
 
 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (quoting
 
 United States v. Sioux Nation of Indians,
 
 448 U.S. 371, 432, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (Rehnquist, J., dissenting)). In so holding, the Court noted that “ ‘[t]his result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant’s interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.’ ”
 
 Id.
 
 (quoting
 
 Sioux Nation,
 
 448 U.S. at 432, 100 S.Ct. 2716 (Rehnquist, J., dissenting)). The Court of Appeals reached a similar conclusion in
 
 Johnston v. Johnston,
 
 297 Md. 48, 465 A.2d 436 (1983).
 

 In that case, Mr. Johnston filed a petition to set aside a separation agreement that had been incorporated, but not merged, into the parties’ divorce decree, arguing that, at the time he entered the agreement, he was suffering from a mental illness that impaired his capacity to enter into the agreement.
 
 Id.
 
 at 50-51, 465 A.2d 436. Because Mr. Johnston had failed to allege fraud, mistake or irregularity as grounds for his request, the circuit court declined to set aside the agreement and, granting Mrs. Johnson’s motion to strike, struck the petition.
 
 Id.
 
 at 52, 465 A.2d 436. Finding no error, we affirmed the circuit court’s decision.
 
 Id.
 
 at 52-53, 465 A.2d 436.
 

 The Court of Appeals took a different path to reach the same result. It focused on the parties’ separation agreement, holding that “the approval and incorporation of the agreement conclusively established the validity of the agreement and precludes a collateral attack by either party.”
 
 Id.
 
 at 61, 465
 
 *529
 
 A.2d 436. It reached that conclusion despite the failure of the parties to raise this issue, observing: “[W]e believe that in the interests of judicial economy it is appropriate for us to address it as it is dispositive of the matter before us.”
 
 Id.
 
 at 59, 465 A.2d 436. The Court thus declared that, in the interests of judicial economy, it may sua sponte invoke res judicata or collateral estoppel to resolve a matter before it.
 

 Appellant’s contention that the Association had discriminated against him in the enforcement of its rales was fully litigated and decided in the Circuit Court for Montgomery County before this matter came to trial in the same court. To now permit appellant to relitigate this issue or to remand this case for the sole purpose of permitting the Association to raise this defense would constitute an unacceptable waste of the parties’ and the circuit court’s resources, particularly when appellant was not prejudiced by the Association’s belated assertion of that defense. Indeed, appellant was given the opportunity to present any argument he might have had in connection with this issue below. We therefore hold that the court did not commit reversible error in granting summary judgment in favor of the Association as to appellant’s derivative action.
 

 Abuse of Process
 

 Appellant argues that the circuit court erred in granting Peters’ motion to dismiss appellant’s abuse of process claim. We disagree.
 

 We begin our analysis of this claim by noting that, “[i]n reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action.”
 
 Fioretti v. Md. State Bd. of Dental Exam’rs,
 
 351 Md. 66, 72, 716 A.2d 258 (1998). To make that determination, we view all well-pleaded facts “ ‘in the light most favorable to the plaintiff.’ ”
 
 Tavakoli-Nouri v. State,
 
 139 Md.App. 716, 725, 779 A.2d 992 (2001) (quoting
 
 Parker v. Kowalsky & Hirschhorn, P.A.,
 
 124 Md.App. 447, 458, 722 A.2d 441 (1999)). That means that any “[a]mbiguities
 
 *530
 
 and uncertainties” in the complaint must be construed in his or her favor.
 
 Downs v. Roman Catholic Archbishop of Balt.,
 
 111 Md.App. 616, 619, 688 A.2d 808 (1996). After doing so, we may affirm a grant of a motion to dismiss for failure to state a claim “on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised.”
 
 Pope v. Bd. of Sch. Comm’rs,
 
 106 Md.App. 578, 591, 665 A.2d 713 (1995).
 

 The tort of abuse of process “ ‘is concerned with the improper use of civil or criminal process in a manner not contemplated by law after it has been issued----’”
 
 One Thousand Fleet Ltd. P’ship v. Guerriero,
 
 346 Md. 29, 39, 694 A.2d 952 (1997) (quoting
 
 Walker v. American Sec. Co.,
 
 237 Md. 80, 87, 205 A.2d 302 (1964)). The elements of abuse of process are: “first, that the defendant wilfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendants use of perverted process.”
 
 Id.
 
 at 38, 694 A.2d 952 (citations omitted).
 

 The mere issuance of the process itself, however, is not actionable, even if it is done with an “ulterior motive” or “bad intention.”
 
 Herring v. Citizens Bank and Trust Co.,
 
 21 Md.App. 517, 534, 321 A.2d 182 (1974). Rather, ‘“[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is
 
 required....’” One Thousand Fleet,
 
 346 Md. at 38, 694 A.2d 952 (quoting W. Keeton,
 
 Prosser & Keeton on the Law of Torts
 
 § 121, at 898 (5th ed.1984)). And “[t]here must be an abuse of the process after it has been issued.... ”
 
 Herring,
 
 21 Md.App. at 534, 321 A.2d 182;
 
 see also Keys v. Chrysler Credit Corp.,
 
 303 Md. 397, 412, 494 A.2d 200 (1985) (no cause of action would lie for abuse of process when “there [was] no evidence of any improper use or perversion of the process after it was issued”). As the Court of Appeals observed:
 

 “If the process is employed from a bad or ulterior motive, the gist of the wrong is to be found in the uses to which the party procuring the process attempts to put it. If he is content to use the particular machinery of the law for
 
 *531
 
 the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. But the moment he attempts to attain some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated.”
 

 Palmer Ford, Inc. v. Wood,
 
 298 Md. 484, 512-13, 471 A.2d 297 (1984) (quoting 1 Fowler v. Harper & Fleming James, Jr.,
 
 Law of Torts
 
 331 (2d. ed.1956)). The Court further noted:
 

 “The most common instance of the operation of this principle is an attempt to extort money from the person subjected to the process.... So also, a person using the process of the criminal law to enforce payment of a debt is abusing legal process and is liable in damages.”
 

 Id.
 
 at 513, 471 A.2d 297 (quoting Harper
 
 &
 
 James,
 
 swpra,
 
 at 331).
 

 Moreover, to maintain a claim for abuse of process the plaintiff must allege that he was unlawfully arrested or his property unlawfully seized.
 
 Herring,
 
 21 Md.App. at 536, 321 A.2d 182 (“[T]he injuries contemplated by this particular tort (and an indispensable element of it) are limited to an improper arrest of the person or an improper seizure of property.”);
 
 see also One Thousand Fleet,
 
 346 Md. at 45-46, 694 A.2d 952 (“The plaintiff [must] establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process.”). Unfortunately, appellant has failed to allege either impropriety.
 

 Appellant alleges that “[b]y instituting the [peace order proceedings], Peters’ [sic] misused and perverted the process for an improper purpose, namely, to keep [appellant] away from the [Association] meetings in which Campbell had a right to attend, restricting [appellant’s] freedom and liberty and resulting in the wrongful deprivation of said liberty.” But he does not claim that Peters took any action apart from seeking a peace order. Mere initiation of such proceedings, as noted above, does not constitute the tort of abuse of process.
 
 Herring,
 
 21 Md.App. at 534, 321 A.2d 182.
 

 Appellant also failed to allege he had been arrested or that his property had been seized.
 
 See One Thousand Fleet,
 
 346
 
 *532
 
 Md. at 45-48, 694 A.2d 952;
 
 Herring,
 
 21 Md.App. at 539, 321 A.2d 182. He simply asserted in his complaint that, “as a proximate result and cause of Peters’ perverted use of process, [he] was damaged.” Because appellant failed to allege a legally sufficient claim for abuse of process, the circuit court did not err in dismissing that claim.
 

 Malicious Use of Process
 

 Appellant contends that the circuit court erred in granting Peters’ motion for summary judgment as to appellant’s malicious use of process claim. We disagree.
 

 To begin with, “[s]uits for malicious use of process are viewed with disfavor in law and are to be carefully guarded against.”
 
 One Thousand Fleet,
 
 346 Md. at 37, 694 A.2d 952 (quoting
 
 N. Pt. Constr. Co. v. Sagner,
 
 185 Md. 200, 207, 44 A.2d 441 (1945)). Unlike the abuse of process tort, which, as discussed earlier, is “concerned with the improper use of civil or criminal process in a manner not contemplated by law after it has been issued,” the malicious use of process tort is “concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause.”
 
 Id.
 
 at 39, 694 A.2d 952 (quoting
 
 Walker,
 
 237 Md. at 87, 205 A.2d 302). Such a claim has five elements:
 

 First, a prior civil proceeding must have been instituted by the defendant. Second, the proceeding must have been instituted without probable cause---- Third, the prior civil proceeding must have been instituted by the defendant with malice.....Fourth, the proceedings must have terminated in favor of the plaintiff. Finally, the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or by other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.
 

 Id.
 
 at 37, 694 A.2d 952 (citations omitted).
 

 In this case, the circuit court found that appellant could not establish, as a matter of law, two of those five elements—that
 
 *533
 
 the proceeding was instituted without probable cause and that “damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or by other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.”
 

 As for want of probable cause, the Court of Appeals has held that probable cause “means ‘a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of.’ ”
 
 Id.
 
 at 37, 694 A.2d 952 (quoting
 
 Sagner,
 
 185 Md. at 208-09, 44 A.2d 441). “Whether the evidence in any given case is legally sufficient to show want of probable cause is a question of law.”
 
 Sagner,
 
 185 Md. at 207, 44 A.2d 441. Moreover, as a matter of law, “a judgment or decree by a court of competent jurisdiction adverse to the defendant [in the original suit] is, in general, conclusive proof of probable cause, although the judgment ... was later reversed in an appellate court.”
 
 Herring,
 
 21 Md.App. at 540, 321 A.2d 182 (quoting
 
 Owens v. Graetzel,
 
 149 Md. 689, 696, 132 A. 265 (1926)).
 

 Appellant argues that Peters initiated the peace order process in the district court without probable cause. The circuit court, appellant points out, vacated the district court’s order following a
 
 de novo
 
 appeal. That the circuit court found it unnecessary to hear closing arguments before ruling in his favor, appellant claims, is further evidence that the petition for a peace order was not supported by probable cause.
 

 But appellant’s claim fails as a matter of law. Peters’ victory in the district court, though later vacated by the circuit court, is “conclusive proof’ that Peters had probable cause to initiate the process.
 
 See Herring,
 
 21 Md.App. at 540, 321 A.2d 182. And, although the circuit court in the peace order proceedings found that “there ha[d] been no evidence presented to support [Peters’ allegations],” it also expressly found that Peters had a substantial justification for instituting the process.
 

 After the circuit court vacated the peace order against the appellant, appellant moved for sanctions against Peters. The
 
 *534
 
 circuit court denied that request, finding that “there was [not] bad faith and a lack of substantial justification in the filing and prosecution of the Petition for Protective Order.” These facts are not disputed, and they establish, as a matter of law, that Peters had probable cause to initiate the peace order process.
 

 The circuit court also found that appellant could not establish special damages, which the Court of Appeals has defined as “damages ... inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or by other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.”
 
 One Thousand Fleet,
 
 346 Md. at 37, 694 A.2d 952. As the Court of Appeals observed in
 
 One Thousand Fleet:
 

 “Maryland has steadfastly adhered to the so-called ‘English’ rule that no action will lie for the malicious prosecution of a civil suit when there has been no arrest of the person, no seizure of the property of the defendant, and no special injury sustained which would not ordinarily result in all suits prosecuted for like causes of action.”
 

 346 Md. at 44, 694 A.2d 952 (quoting
 
 Sagner,
 
 185 Md. at 207, 44 A.2d 441).
 

 Appellant argues that his “deprivation of liberty,” specifically, his inability to attend Association meetings during the four months that the peace order was in effect, constitutes “special damages.” He is incorrect. Special damages are those that “ ‘would not ordinarily result in all suits prosecuted for like causes of action.’”
 
 Id.
 
 (quoting
 
 Sagner,
 
 185 Md. at 207, 44 A.2d 441). Appellant’s restricted liberty, on the other hand, is a damage that would ordinarily, if not always, result from the issuance of a peace order. For that reason, it is not a “special injury” as contemplated by malicious use of process claim.
 

 II
 

 Appellant contends that the circuit court erred in refusing to grant his motions to compel discovery. This claim is without merit.
 

 
 *535
 
 Appellant filed a motion, inartfully titled “Motion to Compelí Fulfillment of Discovery Requests.” In that motion, he requested, among other things, that the circuit court compel the Association to produce certain records that the Commission had ordered, in another case, be made available to him. Finding that appellant had “not complied] with the applicable rules of procedure” for discovery, the circuit court denied the motion. Appellant does not contest that finding. In fact, he asserts in his reply brief that “both parties ... agree that [appellant] did not comply with the rules of discovery when requesting discoverable material.”
 

 But in his reply brief, he does allege that the Association committed fraud by failing to produce the documents that the Commission ordered were to be made available to him. He also requests that we “sanction [appellees’ counsel] by whatever means is appropriate,” in order “to remedy” what appellant contends are numerous “false statements made and evidence offered in the case at bar.”
 

 Having failed to raise those arguments or seek that relief in his initial brief, appellant may not raise them for the first time in his reply brief.
 
 See Beck v. Mangels,
 
 100 Md.App. 144, 149, 640 A.2d 236 (1994) (“Md. Rule 8-504(a)(5)) requires a party to present ‘argument in support of the party’s position[;] ... [thus], it is necessary for the appellant to present
 
 and argue
 
 all points of appeal in his initial brief.’ ” (citations omitted) (quoting
 
 Fed. Land Bank of Balt, Inc. v. Esham,
 
 43 Md.App. 446, 457, 406 A.2d 928 (1979)). We therefore decline to address these issues.
 

 JUDGMENT AFFIRMED.
 

 COSTS TO BE PAID BY APPELLANT.
 

 [1]
 

 . This order, however, permitted appellant to go to the school, as long as he had no contact with Peters’ children.
 

 [2]
 

 . Appellant admitted, during the following exchange at the July 7th hearing, that the central issue of both cases was the same. He further conceded if the circuit court’s decision in the injunction action was a final judgment then he was precluded by collateral estoppel from raising the same issues which had been litigated during that proceeding:
 

 [The Court]: Isn’t a simpler way to say what you’re saying is that [the circuit court’s ruling in the injunction action] is not a final judgment?
 

 [Appellant]: Absolutely.
 

 [The Court]: Okay. I hear you.
 

 [Appellant]: I’m in big trouble.
 

 [The Court]: Okay. It seems to me that if your claims rest on that and [if] it is a final judgment, then collateral estoppel applies.
 

 [Appellant]: Absolutely.
 

 [3]
 

 . The minority position of at least one of these states is mandated by state statute. The California code provides that “[a]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied.” Cal.Civ.Proc.Code § 1049 (West 1980).